**Alfred H. OSBORNE, Sr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17702.**

United States Court of Appeals
Eighth Circuit.

Aug. 30, 1965.

Supplemental Opinion on Rehearing
and Motion to Remand Denied
Oct. 12, 1965.

Robert G. Duncan, of Simon & Pierce, Kansas City, Mo., Kelso Journey, Clinton, Mo., for appellant.

Herbert W. Titus, Sp. Asst. U. S. Atty., Kansas City, Mo., F. Russell Millin, U. S. Atty., and Calvin Hamilton, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Alfred H. Osborne, Sr., hereinafter frequently referred to as defendant, has appealed from his conviction and sentence upon each of two counts of an indictment. Count I charges defendant with conspiracy with Richard J. Leu, Mary Lee Dorrell and Dickie Dean Crouch to rob certain banks in violation of 18 U.S.C.A. §§ 371 and 2113.

Count II charges Leu with robbing the First State Bank of Dearborn, Dearborn, Missouri, a federally insured bank, and the defendant and Dorrell and Crouch with aiding and abetting the robbery in violation of 18 U.S.C.A. §§ 2 and 2113.

Leu, Dorrell and Crouch entered pleas of guilty upon both counts prior to defendant's trial. Defendant Osborne entered a plea of not guilty and was tried to a jury and found guilty upon both counts. His post-judgment motions were denied and sentence was imposed.

Defendant by motion after his trial raised the issue that he was mentally incompetent at the time of his trial. The court committed the defendant to the Medical Center at Springfield, Missouri, for mental examination and thereafter held a full hearing upon defendant's competency at time of trial. The court determined defendant Osborne to have been competent during the period of his trial. No issue is raised on this appeal on the mental competency.

Defendant at the trial made timely motions for acquittal on the ground of insufficiency of evidence to support a conviction upon either count. Defendant in his present appeal does not raise the sufficiency of the evidence issue. Consequently, we deem it unnecessary to engage in a detailed discussion of the voluminous evidence.

Leu, Dorrell and Crouch testified at the trial. It is undisputed that Leu robbed a number of banks as charged, that Dorrell participated in such robberies and that Crouch participated in the Dearborn bank robbery. It is not claimed that Osborne took an active part in any actual robbery. There is, however, substantial evidence by the co-conspirators that Osborne had an active part in planning the robberies; that he secured Crouch as a participant; that he arranged for the deposit of funds secured from the robberies in the account of American Credit Associates in which he and Leu had an interest; that he arranged to be in Los Angeles at or shortly after each California robbery to arrange for the deposit of the proceeds; that he had full knowledge of the source of the funds and that he received a portion thereof for his own use.

Defendant did not testify at his trial. His position is that he had no connection with the robberies; that he gave information to the Kansas City police which led to the indictment and conviction of his co-defendants. In the statement first made by the co-defendants to officers, Osborne was not implicated in the robbery. Defendant's theory is that his co-defendants falsely implicated him as a means of revenge for his informing upon them.

The testimony of Leu, Dorrell and Crouch clearly implicates Osborne in the offenses charged. There is corroborating evidence in the form of plane tickets, motel registrations, and bank deposits which corroborates the co-conspirators' testimony that Osborne traveled to California at about the time of each robbery. We believe the validity of the conviction turns upon the credibility of the testimony of the alleged co-conspirators. To avoid repetition, additional facts will be developed during the course of the opinion.

Defendant raises six points as a basis for reversal. Both in the brief and oral argument, defendant has placed greatest stress upon his first point. Inasmuch as we believe the case must be reversed on this point, we will confine our discussion largely thereto. The first point is that a transcript of testimony given to a federal grand jury in California by Leu and Dorrell, which had not been offered or admitted in evidence at defendant's trial, was delivered to the jury by the court clerk, and that highly prejudicial and inadmissible evidence is contained in such transcript and that error in delivering such transcript to the jury has deprived defendant of a fair trial.

This error was raised in defendant's motion for a new trial which was denied by the trial court. The court's ruling contains no discussion of this issue.

The grand jury transcript in question has an involved history. The transcript containing the grand jury testimony of

Leu and Dorrell had been made available to and was in the possession of the United States Attorney prosecuting this case. Defendant first requested the production of this transcript at a pretrial hearing. Such request was properly denied on the ground that it was premature. Defendant renewed the request during Dorrell's examination as a witness. The court denied the request upon the ground the grand jury testimony was confidential and that it could be released only by the California federal court in which the grand jury sat. With the cooperation of the United States Attorney, the California federal court judge authorized Judge Beck, who was presiding over this trial, in his discretion to release the transcript to the defendant for inspection and use in cross-examination. The transcript had been submitted to Judge Beck who had examined it in camera. It was sealed in an envelope marked Exhibit C–19. Judge Beck ruled that the transcript should be submitted to the defendant and at the suggestion of the United States Attorney, he released only the portion of the transcript relating to Dorrell's testimony and directed that the defendant's examination thereof be made in the courtroom. Defendant did use the transcript in cross-examining Dorrell and secured her admission with respect to making certain statements contained in the transcript which were believed to be inconsistent with her testimony at the trial. The transcript was not offered in evidence and it was returned to the Government.

During Leu's testimony, defendant asked for the grand jury transcript as to him. The court, after examining Leu's grand jury testimony, expressed doubt whether there was any inconsistency with his testimony at the trial but directed that the transcript, which then bore the identification Defendant's Exhibit 47, be given defendant. The record shows nothing with relation to marking the exhibit or who requested that it be so identified. Defendant examined the exhibit but made no use whatsoever of the transcript in the cross-examination of Leu. While Leu was on the witness stand, the following colloquy took place:

"The Court: For the purpose of the record, on the transcript of the proceedings before the Grand Jury, a copy of that transcript having been delivered to counsel for the defendant, as I understand it you are now returning it to counsel for the government?

"Mr. Simon: We have, Your Honor. We have returned to the Clerk, Exhibit D–47, the transcript.

"The Court: And you have no further use for it?

"Mr. Simon: We have no further use of it."

At the time of the hearing upon defendant's motion for new trial, it was stipulated that the transcript containing the grand jury testimony was in fact taken by the jury into the jury room. The record there made in part reads:

"The Court: What was the record on that? You offered it?

"Mr. Duncan: If my recollection serves me correct, Judge, the exhibit was never introduced.

"The Court: It was marked?

"Mr. Duncan: Yes, it was marked.

It was Defendant's Exhibit 47.

"The Clerk: And shows received.

"The Court: At whose instance, upon whose motion?

"The Clerk: I don't have that, Your Honor. As I recall, it was received partially on Mary Dorrell's testimony and later on it was received in full."

We have carefully examined the record, which is not satisfactorily indexed, with respect to exhibits and find no record whatsoever of the offer in evidence of Exhibit D–47 or any order or stipulation with respect to its admission. Absent such record, the unclear and unsatisfactory explanation of deputy clerk Cook as to his record showing admission carries little weight. Defendant's counsel denied

they offered the exhibit in evidence. The Government makes no claim that either party offered the exhibit in evidence.

██ The delivery to the jury for their consideration of an exhibit not received in evidence constitutes error. Sawyer v. United States, 112 U.S.App.D.C. 381, 303 F.2d 392, 395; United States v. Grady, 7 Cir., 185 F.2d 273; United States v. Douglas, 7 Cir., 155 F.2d 894, 896. In Douglas, two affidavits attached to the information containing proof in support of the charges were given to the jury along with the information. As a basis for reversal, the court states:

"In fact, we think that there would be no difference in effect or result if the transcript of the testimony given before a grand jury as the basis for an indictment was submitted to the trial jury. Surely no one would seriously contend but that such procedure would constitute prejudicial error."

The Government in its brief asserts that no prejudicial error was committed in giving to the jury the transcript of the grand jury testimony, Exhibit D–47, for reasons which we have summarized as follows: (1) The record supports an inference that attorneys for both sides reviewed all exhibits prior to the delivery of the exhibits to the jury and hence any error in the delivery of Exhibit D–47 to the jury was waived. (2) Any error committed was induced by defendant's failure to screen the exhibits. (3) The trial court's denial of a new trial involved an exercise of discretion and no abuse of discretion is shown. (4) Because of the strong case made by the Government, defendant could suffer no prejudice.

██ We reject all such contentions. With respect to the first contention, we observe that the Government made no positive statement before the trial court or here that all exhibits were screened by opposing counsel. The following record was made:

"The Court: Isn't it correct that counsel for both sides were sorting those exhibits and you read which ones were to go—

"Mr. Duncan: I don't believe so.

"Mr. Journey: No.

"Mr. Duncan: We were going through some of the Government's exhibits because there was portions that were excised of those, but I do not believe we went through the defendant's exhibits.

"The Court: I had the assurance that the ones which went to the jury had come from both sides. I may be wrong on that."

From the trial record, it appears that the matter with respect to exhibits which counsel were directed to solve related to which Government exhibits or parts thereof should be excluded on defendant's motion to strike by reason of the trial court's ruling that the conspiracy ended on November 8, 1962. Some of the exhibits contained reference to evidence occurring subsequent to the end of the conspiracy. We find nothing in the record which supports a conclusion that the court directed counsel to screen all exhibits or that counsel undertook to do so.

The Government in support of its second point cites Finnegan v. United States, 8 Cir., 204 F.2d 105, 115–116, and United States v. Strassman, 2 Cir., 241 F.2d 784, 786, for the proposition that counsel have a duty to check exhibits and that any error occasioned by failure to screen is waived. In Finnegan, it was urged that error was committed in that the jury was given several exhibits which were not received in evidence. The trial court denied the motion for new trial pertaining to such error on three grounds, to wit, (1) attorneys had a duty to examine exhibits; (2) exhibits were cumulative and not prejudicial; (3) concurrent sentences were imposed on two counts and exhibits did not apply to one of the counts. In affirming, we stated that there was no showing of prejudice. We did not discuss the issue of the duty of the attorneys to check the exhibits and no facts bearing upon such issue are set forth in the opinion.

In Strassman, the complaint was that the entire exhibit was sent to the jury although part thereof had been ruled inadmissible and that the inadmissible portion had not been blocked out. The appellate court expressed the view that the entire exhibit was admissible and that no prejudicial error had been committed and decided the case on that basis. The court went on by way of dictum to say that counsel for both parties had a duty to check over the exhibits to see that the portions excluded are blocked off and that a failure to do this "may well constitute a waiver." Strassman is distinguishable from our present case in that there counsel was aware that an exhibit containing matter excluded was being sent to the jury.

We find nothing in the cases just discussed which would support a finding of waiver in our present case. While Exhibit D–47 had been marked by the reporter, the record does not disclose the method employed by the court for the custody and control of exhibits. We recognize that it might be burdensome for the court in a protracted case involving many exhibits to personally assume the task of screening the exhibits. Doubtless the court could delegate such task if he so chose to the reporter, the clerk, his law clerk, or some other responsible person, or he could by express direction place the burden upon the opposing counsel. Since the clerk apparently delivered the exhibits the responsibility may well have been placed upon him. We find absolutely nothing in the record here to indicate that the court either expressly or impliedly placed the duty upon counsel to screen all the exhibits.

■ Moreover, we do not here have a situation where a defendant having possession and custody of an exhibit which has not been received in evidence carelessly left it among the exhibits. As heretofore pointed out, the defendant's right to the possession of the exhibit was strictly limited to a brief examination thereof in the courtroom and it was returned to the Goverment immediately after inspection at the court's direction.

It is not suggested that the defendant did anything which affords a basis for an inference that the defendant induced the delivery of the exhibit to the jury for the purpose of inviting error or for any other reason. It is inconceivable that an attorney would knowingly permit evidence as damaging as Exhibit D–47 to reach the jury. We find in the record no basis for alerting the defendant to the possibility that an exhibit not offered or received would reach the jury. Both the Government and the defense were surprised when they learned after the verdict that the jury had the exhibit. Under the facts here disclosed, the defendant did not waive the error committed in giving Exhibit D–47 to the jury.

■ For its third point, the Government urges that the defendant is bound by the trial court's ruling denying his motion for a new trial upon the ground here under consideration. Without doubt, the trial court possesses a large discretion in ruling upon motions for new trial and its determination is entitled to great respect. However, if the court committed prejudicial error in permitting Exhibit D–47 to reach the jury, the refusal to grant a new trial would clearly constitute an abuse of discretion. In Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250, the court in reversing the action of the trial court in denying a new trial for prejudicial matter reaching the jury in the form of newspaper publications, states:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251 [31 S.Ct. 2, 54 L. Ed. 1021]. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost

certain to be as great when that evidence reaches the jury through news accounts as when it is part of the prosecution's evidence. * * "

■ We now reach consideration of the issue of whether the error committed was prejudicial. Federal courts in recent years have uniformly held that error prejudicial to defendant's substantial rights must be shown to entitle the defendant to a reversal. Fed.R.Crim.P. 52; Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557; Evenson v. United States, 8 Cir., 316 F.2d 94, 95; Homan v. United States, 8 Cir., 279 F.2d 767, 771. In Homan, we stated:

"The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect. Blackwell v. United States, 8 Cir., 244 F.2d 423, 431. 'If, [however], when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress' (presumably as a question of substantive or procedural due process). Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L. Ed. 1557."

■ The general rule, subject to certain exceptions not here applicable, is that placing before the jury evidence of other crimes committed by the defendant constitutes prejudicial error. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171; Kraft v. United States, 8 Cir., 238 F.2d 794, 801–802; Kempe v. United States, 8 Cir., 151 F.2d 680, 697; Thurman v. United States, 9 Cir., 316 F.2d 205; United States v. Kum Seng Seo, 3 Cir., 300 F.2d 623, 625.

In Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168, the Court holds: "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt."

In Upham v. United States, 5 Cir., 328 F.2d 661, the court noted plain error and reversed when a statement given by the defendant to an FBI agent, which contained extremely damaging evidence, was received in evidence for impeachment purposes without objection and the court failed to instruct that it could only be used for impeachment purposes although no request for such instruction was made. We need not go this far here.

■ When the foregoing standards are applied to the facts in this case, we cannot escape the conclusion that the grand jury transcript contains highly damaging and prejudicial matter which could well have an effect upon the jury verdict. In addition to implicating the defendant in the robbery here involved, Exhibit D–47 contains considerable testimony of alleged statements of defendant which blacken his character and show him to be guilty of other crimes. Defendant's connection with fraudulent schemes and close association with parties engaged in crimes is disclosed. Leu's transcript testimony includes a statement that the defendant concluded a business deal at the point of a gun. Included in Leu's testimony is the following:

"Q. And has Osborne ever mentioned whether or not he had a witness taken care of in the past to you?

A. Yes.

Q. Would you explain to the Grand Jury, Dick, what he said concerning that?

A. Well, there was one day we were—it was right after either the —I think it was right after the first Santa Ana bank robbery, or it might have been after the Downey bank robbery, we were in my car and we were driving along and we had had a couple of drinks and he is very good at blowing up your balloon,

'Boy, you're the greatest, Dick, and you're the greatest and I wish I had known you back in 1950 or '52,' he said, 'I had some people I wanted taken care of and I couldn't get anybody to do it.' They took care of somebody, he mentioned the name at the time, and I said, 'Well, is that who they talk about when they talk about Seldom Seen?' And he said, 'That's right, but they were afraid to take care of the people,' and I believe it was the people on the Grand Jury, and, anyhow, it was either the Grand Jury, District Attorney or Judges that he wanted some one of them hurt so that the others would— I think it was maybe possibly on the jury at the time of his trial, and he said, 'If I had known you we could have'—he said I would have been all right and I never would have done any time on anything.

Q. What was the name of that individual again that he said he had taken care of?

A. I don't know the actual name, but I knew him as Seldom Seen, which was a joke around Kansas City, that Seldom Seen was seldom seen after that."

■ The Government urges that by reason of the strength of their case the asserted error is not prejudicial. We have recognized that the strength of the case has a bearing on the prejudicial error issue. Evenson v. United States, supra; Homan v. United States, supra. We have no doubt that there is substantial evidentiary support apart from Exhibit D–47 to support the verdict. The strength of the Government's case depends very largely upon the credibility of the witnesses Leu, Dorrell and Crouch. All were admitted accomplices. Federal courts have consistently held that a conviction can rest upon the uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face. Williams v. United States, 8 Cir., 328 F.2d 256, 259. It is also well-established that it is " 'the better practice for courts to caution juries against too

much reliance upon the testimony of accomplices and to require corroborating testimony before giving credence to such evidence.' Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 * * *." Bass v. United States, 8 Cir., 324 F.2d 168, 172. Our problem is further complicated in the present case by defendant's contention that the accomplices implicated him because he had informed upon them.

■ The fact that the jury deliberated some sixteen hours, covering two full working days, that they requested an additional exhibit and the re-reading of the instructions, lends credence to the view that the case was a close and a difficult one.

There is no evidence one way or the other with respect to the use of Exhibit D–47 by the jury. During the trial, the transcript was surrounded with secrecy and it was the subject of a number of discussions. Of all the exhibits, it was the one most likely to arouse the curiosity of the jury and to attract their attention.

The court in its instructions to the jury stated: "A large number of exhibits have been received in evidence. These will go with you to the jury room and you are to give them such consideration as you think right and proper under all the facts, circumstances and evidence of the case."

The long deliberation by the jury and its conscientious effort reflected by its notes to the court seeking aid, makes it likely that the exhibit was examined. Under somewhat similar circumstances, the court in United States v. Grady, 7 Cir., 185 F.2d 273, 275, stated:

"True, it is possible that the defendant suffered no harm by reason of the affidavit going to the jury; in fact, it could be that the affidavit was not seen by a single member of the jury. On the other hand, it could and it might have been used effectively in persuading jurors otherwise doubtful or opposed to conviction to agree to a verdict favorable to the government. And it is

sufficient to require a reversal if, in our judgment, the error might have operated to the substantial injury of the defendant. See United States v. Dressler, 7 Cir., 112 F.2d 972, 978 (and cases cited)."

We hold that prejudicial error was committed in giving the jury Exhibit D–47 which was neither introduced nor received in evidence. Such error deprived defendant of a fair trial and requires a reversal and a new trial.

While not pertinent to the reversal, inasmuch as the issue may arise upon a new trial and the parties have argued the question extensively, we will deal briefly with defendant's complaint that the court erroneously refused the delivery for examination of Exhibits C–11, C–12 and C–13 under the Jencks Act for use in cross-examining the witness Dorrell. The trial court gave full consideration to the testimony of the Government agent taking the statement, which testimony is somewhat ambiguous. The court examined the statements in camera and held a lengthy hearing and discussed the issue fully in a memorandum opinion on file.

In Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287, the Supreme Court observes: "Final decision as to production must rest, as it does so very often in procedural and evidentiary matters, within the good sense and experience of the district judge guided by the standards we have outlined, and subject to the appropriately limited review of appellate courts." See United States v. Hilbrich, D.C.Ill., 232 F.Supp. 111, 125–126.

▆▆▆ We believe that there is substantial evidentiary support for the court's conclusion that the exhibits do not, under the provisions of 18 U.S.C.A. § 3500(e)(2), constitute a stenographic recording or transcription thereof which is substantially a verbatim recital of an oral statement made by the witness Dorrell.

By reason of the prejudicial error committed by sending Exhibit D–47 to the jury, the judgment is reversed and this case is remanded to the trial court for a new trial.

Supplemental Opinion on Rehearing and Motion to Remand.

The Government has filed petition for rehearing and in the alternative a motion to stay our mandate and remand to the district court for an evidentiary hearing upon whether Exhibit 47 was given to the jury. In our opinion filed August 30, 1965, we reversed on the ground that prejudicial error had been committed in sending Exhibit 47 to the jury.

The record shows Exhibit 47 was not offered or received in evidence. The Government at no time has seriously contended that Exhibit 47 was in fact ever received in evidence.[1]

The thrust of the Government's argument here is that it should be permitted at this late date to show that Exhibit 47 never reached the jury. At the hearing on the motion for new trial with respect to the ground thereof that prejudicial error was committed in sending Exhibit 47 to the jury, the following proceedings took place:

"Mr. Duncan: I would like to call Mr. Cook to testify regarding the delivery of Grand Jury testimony to the jury for their deliberations.

1. In the petition for rehearing, the Government calls attention to the fact that defense counsel in argument pointed out that witness Dorrell in cross-examination had admitted making certain statements which counsel read from the grand jury transcript. Counsel contended such statements were inconsistent with testimony given by Dorrell at the trial, stating, "Dorrell said—Exhibit 47 which is in evidence—she was asked the question." It is somewhat unclear whether counsel meant the questions read were in evidence or the exhibit itself. If the statement can be construed as an expression by defense counsel that Exhibit 47 is in evidence, it is noteworthy that the point was not made in the briefs or arguments on appeal nor has any contention ever been made that reliance on this statement had anything to do with sending the exhibit to the jury.

Mr. Millin: We will stipulate that he would so testify.

\* \* \* \* \*

The Court: I see. All right. Is there any further record you need on that?

Mr. Duncan: No, if they will stipulate that it was in fact taken to the Grand Jury.[2]

Mr. Millin: And it was shown to be received in evidence, according to the Clerk's notes.

Mr. Duncan: According to the Clerk's notes, yes.

Mr. Millin: All right.

The Court: All right."

The foregoing is a stipulation of fact. Mr. Cook, the deputy clerk, was present in the courtroom when it was made and did not dissent but tried to justify his action by showing that his notes showed Exhibit 47 had been received in evidence. We have no doubt but what the able United States Attorney fully discussed this matter with Mr. Cook before making the stipulation.[3]

By entering into the stipulation, calling Mr. Cook as a witness was avoided. Thereby the benefit of his testimony while it was fresh in his mind was lost. It is apparent from the record that the Government entered into the stipulation voluntarily without any urging or coercion on the part of the defense.

■ Stipulations of fact fairly entered into are controlling and conclusive and courts are bound to enforce them. Burstein v. United States, 8 Cir., 232 F. 2d 19, 22; H. Hackfeld & Co. v. United States, 197 U.S. 442, 446, 25 S.Ct. 456, 49 L.Ed. 826; see 83 C.J.S. Stipulations §§ 17 and 23.

■ While relief may be granted from a stipulation under appropriate circumstances—83 C.J.S. Stipulations §§ 34–36—no showing warranting such relief is here made. The Government adhered to its stipulation throughout the proceedings in the trial court and in its briefs and oral argument upon appeal to this court. It did this knowing that defendant was placing great reliance upon his point that prejudicial error was committed in giving Exhibit 47 to the jury. It was only after this court reversed upon appeal that the Government initiated its attempt to repudiate its stipulation.

■ The function of this court is to decide cases upon the record made in the trial court. It is fundamental that issues not raised in the trial court cannot be raised upon appeal. This court cannot try cases de novo and consider evidence not presented to the trial court.

■ Any available relief from a stipulation should be sought in the trial court and request for such relief should be timely. It is too late after the case has been decided upon appeal to seek such relief, particularly in circumstances such as here where the stipulation was not obtained by fraud or misrepresentation and where the Government was at least as able as the defendant to obtain Mr. Cook's version of what happened before the stipulation was entered into. The Government has submitted no authorities supporting its claim for relief here made. We hold that the parties are bound by the stipulation.

The Government's petition for rehearing and its motion to stay mandate and remand are denied. We adhere to our original opinion.

2. The Government agrees that the word "Grand" preceding the word "Jury" inadvertently appears in the transcript and that the stipulation was to cover the delivery of Exhibit 47 to the jury.

3. In an affidavit tendered by the Government to this court, which we cannot consider as it is not part of the record upon appeal, Mr. Cook says that he cannot state whether or not he gave Exhibit 47 to the jury.