UNITED STATES of America, Appellee,

v.

Johnson ST. CLAIR, Appellant.

No. 87–2490 EA.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1988.
Decided Aug. 17, 1988.

Bobby McDaniel, Jonesboro, Ark., for appellant.

Kenneth F. Stoll, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before BOWMAN and BRIGHT, Circuit Judges, and HARPER,* Senior District Judge.

HARPER, Senior District Judge.

Appellant was tried before a jury and was found guilty of violating the conspiracy statute, 18 U.S.C. § 371 (Count I), and of aiding and abetting in making a destructive device, in violation of 26 U.S.C. § 5861(f) and 5871 (Counts II and III). He was sentenced to five years imprisonment on Count I, and five years each on Counts II and III, to run concurrently with each other, but consecutively with Count I. Appellant was also ordered to make restitution and assessed a special assessment of $50.00 per count. These convictions arose out of the occurrences of two explosions at the Osceola, Arkansas airport. The following facts pertain to this appeal.

On January 12, 1987, an airplane which belonged to William Bradford was damaged by use of explosives while it was parked at the Osceola airport. Dick Prewitt was the mayor of Osceola at that time. Apparently, some of the voters in Osceola were vehemently opposed to the manner in which Mayor Prewitt carried out his mayoral duties. Mayor Prewitt also owned an airplane. His airplane was parked next to Bradford's and was similar in design and color. On February 12, 1987, Mayor Prewitt's airplane was damaged by explosives. He was at his home at the time. He was notified at around 3:30 a.m. that his airplane had been damaged. He prepared to leave for the airport, and as he began to back out of his garage he noticed a package lying on the garage floor that had been under his automobile. He called the Osceola police department. The package subsequently was identified as containing Tovex, an explosive material.

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

Appellant had been opposed to Mayor Prewitt's election to office. He had been acquainted with an individual named Clyde Harris for several years. Harris was a co-defendant and the chief government witness in this trial. Appellant testified that some time in early January, 1987, Harris contacted him and told him that he had a means of obtaining information which would force Mayor Prewitt out of office and that it would require $700.00 to hire others to gather the information. Appellant gave Harris three or four hundred dollars. Appellant claimed he did not speak to Harris again until after the first bombing, and that when they did eventually speak, Harris admitted he had caused the explosion of Bradford's airplane. Apparently, it had been mistaken for Mayor Prewitt's plane. Appellant claimed that the next time he spoke with Harris was in early February, 1987, when Harris called him at home and demanded the balance of the original $700.00. Appellant stated he did not pay Harris at that time. When the second bombing occurred on February 12, 1987, appellant stated he decided to pay off the balance because he was frightened of Harris.

Harris testified that appellant approached him in December, 1986, and offered him $700.00 to blow up Mayor Prewitt's airplane. Harris further testified he agreed to do so, and in furtherance of the plan he obtained several sticks of Tovex from an acquaintance at the State Game and Fish Commission.

As noted, there were three different bombs that were prepared, one bomb each for the two airplanes and one bomb for Mayor Prewitt's car. The bomb that had been placed under the car never exploded. Harris testified he had tampered with the fuse on the bomb prepared for the car to prevent it from detonating. Lloyd T. Erwin, a forensic chemist with the Bureau of Alcohol, Tobacco and Firearms, testified for the government as an expert witness on the subject of explosives. After analyzing the bomb found on Mayor Prewitt's garage floor, Erwin testified the bomb did not detonate because it had been improperly assembled. He testified he did not find any visible signs that anyone had tampered with the fuse. This testimony was, of course, contradictory to that of Harris and had the potential of seriously undermining Harris' credibility.

On February 13, 1987, Harris was questioned by the police concerning the bombing incidents. On February 16, 1987, he was arrested. Harris agreed to cooperate with the officers by wearing a body mike and meeting with appellant. Harris and appellant met two different times on February 16, 1987. The conversations consisted, among other things, of Harris indicating to appellant that he desperately needed money so he could leave town because the police suspected his involvement with the bombings. The body mike tape also contained an agreement between the two that they would not inform the police that appellant had given Harris the $700.00 previously mentioned. Appellant was arrested by the Arkansas State Police shortly after the second meeting.

During the course of the trial, Lieutenant Jim Jenkins of the Arkansas State Police, testified that appellant had refused to take a polygraph test. The district court denied appellant's motion for a mistrial, and immediately gave a cautionary instruction to the jury admonishing them to disregard the testimony concerning the polygraph. At the close of trial, the jury deliberated, and returned a guilty verdict on all three counts. After the verdict was returned, it was discovered that one of the jurors had seven years' experience with explosives. Appellant filed a motion for a new trial, and a hearing was held on October 22, 1987. At the hearing, the jury foreman stated that this juror told the other jurors that the testimony of both the expert witness for Harris and for the government could have been accurate. If this were the case, according to appellant, then that information would serve to reconcile what otherwise appeared to be conflicting testimony, and thereby strengthen the jury's view of Harris' credibility. The jury foreman further testified that the juror did not offer this information prior to the jury's reaching a guilty verdict on the con-

spiracy count. Rather, the juror spoke up during the deliberations over the second and third counts, which concerned appellant's participation in making the explosives.

Appellant raises three issues on appeal:

I. Whether the trial court erred in denying the appellant's motion for new trial based upon jury misconduct.

A. Whether the trial court erroneously required the appellant to bear the burden of proving actual substantial prejudice upon the showing that a juror introduced extraneous expert information to the jury during the deliberation process which was not introduced as evidence.

B. Whether the trial court failed to properly consider the separate issue of jury misconduct during the voir dire process; and failed to allow the appellant the opportunity to prove elements required for a new trial.

II. Whether the trial court erred in denying the appellant's motion for mistrial based upon the introduction of evidence concerning the appellant's refusal to submit to a polygraph test.

III. Whether the trial court erred in denying the appellant's motion to suppress body mike tapes.

■ First, appellant argues the trial court should have granted him a new trial once it was discovered that one of the jurors had seven years of experience with explosives. Appellant argues the district court applied the wrong standard of review by requiring him to prove actual substantial prejudice resulted when the juror introduced extraneous expert information during deliberations. The district judge relied on *United States v. Hood*, 593 F.2d 293 (8th Cir.1979) in defining the test for determining any resultant prejudice. *Hood* held the exposure of publicity adverse to the defendant to jurors during a trial might create a danger of substantial prejudice to the defendant. This initial determination of substantial prejudice must be made by the district judge who then decides whether to individually poll the jurors and whether to declare a mistrial.

Appellant argues he should have been held to a less burdensome standard for assessing prejudice, and cites *United States v. Adams*, 385 F.2d 548 (2d Cir.1967) in support of the rule that a jury may consider only those matters received in evidence, and a breach of this rule warrants a new trial if there is the "slightest possibility that harm could have resulted." *Adams*, at 550–551. *Adams* cites an Eighth Circuit case to support this general rule, *Osborne v. United States*, 351 F.2d 111 (8th Cir.1965).

*Osborne* concerned an incident where a grand jury transcript was not introduced in evidence, but was given to the jury during deliberations. The grand jury testimony contained statements made by the defendant which showed him to be of bad character and also to be guilty of other crimes. The Eighth Circuit ordered a new trial because the testimony contained highly damaging and prejudicial matter which could have affected the jurors' decisions. Our review of Eighth Circuit case law indicates that this Circuit has never applied a "slightest possibility" standard announced in *Adams*. See *United States v. Spica*, 413 F.2d 129 (8th Cir.1969); *United States v. Mooney*, 417 F.2d 936 (8th Cir.1969); *DePugh v. United States*, 401 F.2d 346 (8th Cir.1968); *Hansen v. United States*, 393 F.2d 763 (8th Cir.1968).

The district court reached the correct decision regardless of which test is used. The jury foreman testified the juror did not voice his expertise until after the jury had reached a verdict on the conspiracy count. Based on this testimony, the district judge acted well within his discretion in ruling against a new trial. The extraneous information became known to the entire jury "after the fact", and this thereby precludes a finding of prejudice. This portion of defendant's first argument is without merit.

■ Next, appellant attempts to show he was denied his Sixth Amendment right to a trial by an impartial jury. He argues that the trial court erred in failing to properly

consider the separate issue of jury misconduct during voir dire, and failed to allow him the opportunity to prove the elements required for a new trial. The Supreme Court has defined the test for determining whether juror responses during voir dire necessitate a new trial. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984) held:

> "To obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause."

Appellant clearly meets the first part of the *McDonough* test. The second part of this test requires that appellant show that the juror's experience with explosives would warrant a challenge for cause. A closer look at the voir dire proceedings leads us to the conclusion that this portion of appellant's argument warrants a reversal.

During voir dire questioning, the defense counsel gave a general statement to the panel that if any question asked of a particular individual pertained to any of the others, then those others should speak up because the individual questions were to be taken as applying to the whole panel. The panel members indicated they would abide by this request. At one point during questioning, defense counsel questioned panel member Virgil Clayton concerning his previous military experience. In pursuing this subject, one of the questions directed to Clayton was whether he had had any experience with explosives while serving in the Military. The following dialogue took place:

> "MR. McDANIEL: All right, sir. Did you have any experience with explosives in the military?
>
> "MR. CLAYTON: Yes, sir.

> "Mr. McDANIEL: What type experience is that?
>
> "MR. CLAYTON: Well, I was an ordinance officer and we dealt almost exclusively with different types of explosives.
>
> "MR. McDANIEL: All right, sir. There's going to be some witnesses testify about I think it's called Tovex. Do you have any familiarity with a gelatin like explosive dynamite made by Du-Pont?
>
> "MR. CLAYTON: Yes, sir.
>
> "MR. McDANIEL: All right. So then you have some knowledge, expert knowledge, that these other people wouldn't have, I take it. Probably.
>
> "MR. CLAYTON: Possibly, yes, sir.
>
> "MR. McDANIEL: In that regard, would you let the people from the witness stand tell what about this stuff rather than interject what personal knowledge you might have had some 10 or 20 years ago, five years ago or whatever?
>
> "MR. CLAYTON: Well, I would listen to what they said. If they were—If they told something I didn't know I would be more than willing to learn something new.
>
> "MR. McDANIEL: All right, sir. In other words, what I'm asking you is can you base your evidence on your verdict on what you hear from the witness stand rather that from personal knowledge that I for one and the others wouldn't have any way of knowing what it is?
>
> "MR. CLAYTON: Certainly."

■ The juror who later professed during deliberations to seven years of experience with explosives did not speak up during voir dire. Defense counsel was never given an opportunity to question whether this juror could, indeed, base a verdict strictly on the evidence and testimony presented at trial. If, on questioning, a potential juror had answered in the nega-

tive, there might have existed the requisite showing for a challenge for cause, because the juror clearly would have entered into the deliberations process with a prejudicial view of the evidence. The district court could have remedied this problem during post-trial proceedings by identifying this juror and questioning him under oath as to his reasons for holding back this pertinent information, and his ability in having reached a guilty verdict without relying on his specialized knowledge. As the record stands, however, we have no way of knowing whether or not defense counsel could meet the second half of the *McDonough* test.

Appellee reminds us that a defendant is entitled only to a fair trial, not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953); *United States v. Bentley*, 706 F.2d 1498, 1511 (8th Cir.1983). Bearing in mind the justified reluctance of the courts to interfere with the jury process, this case warranted a closer look at the reasons behind the juror's failure to speak up during voir dire when questions were asked of others. The credibility of Harris was a crucial factor in reaching a verdict on the conspiracy count. The juror's specialized knowledge related directly to the expert's testimony for both Harris and the government.

Appellant was denied an opportunity to make the required showing that he had a valid basis for a challenge for cause. He may have been denied his Sixth Amendment right to a trial by an impartial jury. We feel compelled to proceed with caution in this area, and therefore reverse and remand the case for a new trial.

■ We briefly touch on appellant's two remaining issues on appeal should they repeat themselves at trial. Appellant argues the trial court erred in denying his motion for mistrial based on the testimony of Lieutenant Jenkins regarding his refusal to submit to a polygraph test. The Eighth Circuit has held that it is improper for a witness to testify whether or not a criminal defendant refused to submit to a polygraph test. *Rothgeb v. United States*, 789 F.2d 647 (8th Cir.1986). After Jenkins' reference to the polygraph, the trial judge instructed the jury to disregard that portion of his testimony. Appellee argues the trial judge's cautionary instruction corrected the error.

There is a wide variety of views among the circuits concerning the effect a cautionary instruction has on the minds of the jurors once they have listened to prejudicial testimony. We believe the Fourth Circuit has best defined a test for determining when a cautionary instruction serves its purposes. "To determine whether a curative instruction or a mistrial is the proper response to a polygraph, the court must consider whether an inference about the result of the test may be critical in assessing the witness' credibility and whether the witness' credibility is vital to the case." *United States v. Brevard*, 739 F.2d 180, 182 (4th Cir.1984). In the case herein, credibility was a vital issue relating to the outcome of the verdict. Harris and appellant engaged in what basically was a swearing match. The jury had to believe one or the other of the two men, and appellant's fate depended entirely on which of them the jury found credible. Jenkins' statement regarding appellant's refusal to undergo a polygraph test was a direct reference to appellant's credibility, which was certainly a factual issue that the jury had to consider. "The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J. concurring).

Since the credibility of appellant was critical to the outcome, we believe a cautionary instruction was insufficient to cure the defective testimony.

■ Finally, appellant argues that the trial court erred in denying his motion to suppress the body mike tapes which recorded conversations between him and Harris. Appellant submits that the tapes were made after the conspiracy was alleged to have ceased, according to the indictment. An out-of-court declaration of a co-conspirator is admissible against a defendant where the government can demonstrate (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy. *United States v. Bell,* 573 F.2d 1040 (8th Cir.1978).

Appellee counters that the tapes are admissible pursuant to Fed.R.Evid. 801(d)(2)(A) as a party's own statement. Appellee is correct. This issue does not warrant discussion as it obviously is meritless.

Reversed and remanded for a new trial.