02-10-018-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00018-CR

 

 


 
 
 Keith Demont McCuin a/k/a Keith McCuin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          In
six issues, Appellant Keith Demont McCuin a/k/a Keith McCuin appeals his
conviction for capital murder.  We will affirm.

II.  Background

          On
the night of November 22, 2008, McCuin shot and killed Rodney Ryan at a self-service
car wash located in Fort Worth.  A nearby liquor store’s surveillance camera
captured images of McCuin, his Cadillac, and his twin brother, Kevin, on video
from the night of the offense.[2]  After releasing the
surveillance footage to the media, investigators developed McCuin as a suspect,
arrested him, and collected a DNA sample from him.  Authorities investigating
the homicide never found the $500 in cash that Ryan’s employer had given Ryan
before he was last seen or a red backpack that he “always” carried, but they
did learn that DNA discovered in the front pocket of Ryan’s jeans was
consistent with McCuin’s DNA.  McCuin pleaded not guilty to the offense of
capital murder,[3] but a jury convicted him
of that offense, and the trial court sentenced him to life imprisonment without
parole.[4]

III.  Evidentiary Sufficiency—Intent
to Commit Robbery

          In
his first and second issues, McCuin argues that the evidence is legally and
factually insufficient to show that he committed capital murder because “there
was insufficient evidence to establish that [he] intended to rob the victim,
rather than merely to kill him.”  McCuin thus does not challenge the
sufficiency of the evidence to show that he murdered Ryan.

          The
court of criminal appeals has held that there is no meaningful distinction
between the legal sufficiency standard and the factual sufficiency standard.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis
v. State, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  The Jackson
standard is the “only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt.” 
Id.  Therefore, we overrule McCuin’s second issue challenging the
factual sufficiency of the evidence.

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Clayton, 235 S.W.3d at 778.

          A
person commits capital murder if he commits murder in the course of committing
or attempting to commit robbery.  Tex. Penal Code Ann. § 19.03(a)(2) (West
2011).  A person commits robbery “if, in the course of committing theft . . .
and with intent to obtain or maintain control of the property, he (1) intentionally,
knowingly, or recklessly causes bodily injury to another; or (2) intentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death.”  Id. § 29.02(a) (West 2011).  A person commits theft if he
unlawfully appropriates property with the intent to deprive the owner of it.  Id.
§ 31.03(a) (West 2011).

          The
court of criminal appeals has defined “in the course of committing” an offense
as conduct occurring in an attempt to commit, during the commission of, or in
the immediate flight after the attempt or commission of the robbery.  Lincecum
v. State, 736 S.W.2d 673, 680 (Tex. Crim. App. 1987), cert. denied,
486 U.S. 1061 (1988).  When a person is charged with committing murder in the
course of committing a robbery, “[e]vidence is sufficient to support a capital
murder conviction if it shows an intent to obtain or maintain control of
property which was formed before or contemporaneously with the murder.” 
Shuffield v. State, 189 S.W.3d 782, 791 (Tex. Crim. App.), cert.
denied, 549 U.S. 1056 (2006); Armstrong v. State, No. AP-75706, 2010
WL 359020, at *3 (Tex. Crim. App. Jan. 27, 2010) (not designated for
publication).  The State does not have to prove “that the appellant completed
the theft of the victim in order to establish the underlying offense of robbery
or attempted robbery.”  Young v. State, 283 S.W.3d 854, 862 (Tex. Crim.
App.), cert. denied, 130 S. Ct. 1015 (2009).  Rather, if there is
evidence from which the jury rationally could conclude beyond a reasonable
doubt that the defendant formed the intent to obtain or maintain control of the
victim’s property either before or during the commission of the murder, then
the State has proven that the murder occurred in the course of robbery.  Alvarado
v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).  The jury may infer
the requisite intent to rob from circumstantial evidence, including the conduct
of the defendant.  Id.; see Young, 283 S.W.3d at 862.

          The
evidence demonstrates that Ryan died from a gunshot wound to the chest.  Although
the car wash is located just “next door” to the liquor store, approximately
ninety seconds elapsed between the time that a patron leaving the liquor store
heard a gunshot and the time that Appellant ran from the car wash to the
Cadillac, according to the surveillance footage.  Both Ryan’s sister and his
employer testified that Ryan “always” carried a red backpack with him, but the
backpack was not discovered at the scene or ever returned to his sister. 
Ryan’s employer, Matthew Tago, testified that Ryan worked the day of the
offense, that Ryan was still at work when Tago left the office between 6:00 and
6:30 p.m., that Ryan had said that he wanted to wash his car, and that Tago
gave Ryan $500 cash, which Ryan put in his shirt pocket.  Authorities did not
find the $500.  DNA discovered in the front pocket of Ryan’s jeans was
consistent with McCuin’s DNA; the DNA profile excluded 99.88% of African-Americans.
 Medical personnel found Ryan’s driver’s license identification card on the
ground.  Demarcus Penix told police that McCuin had told him that McCuin “tried
to jack a guy and had to knock him out.”  Penix also told Eric Holder that
McCuin had told Penix that McCuin “approached [Ryan] to rob him, he just wanted
an easy take.”

          McCuin
argues that the presence of his DNA in Ryan’s pocket could be a result of “many
possibilities,” not just that he had the intent to rob Ryan.  But McCuin’s
argument is unpersuasive because “[c]ourts and juries no longer face the
difficult task of excluding every reasonable hypothesis other than the
defendant’s guilt.”  See Laster v. State, 275 S.W.3d 512, 520–21
(Tex. Crim. App. 2009) (explaining abolition of reasonable hypothesis test); Wilson
v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (“We have rejected the
reasonable hypothesis construct as a measure of legal sufficiency.”).

          McCuin
also points out that the time interval between when Ryan left work and the time
of the first 911 call at 8:38 p.m. was more than two hours and, therefore,
“[t]his interval provided ample time for Ryan to make one or more stops, and to
dispose of his backpack and the money.”  Notwithstanding that this appears to
be another reasonable hypothesis-type argument, Tago testified that he “left
[Ryan] behind” when he left work, not that Ryan also left work between 6:00 and
6:30 p.m.

          McCuin
further argues that “Penix’s unsworn statements about McCuin’s alleged
admission were denied by him under oath in court, and were of very dubious
credibility in any event.”  But it was within the province of the jury as
factfinder to believe the portions of Penix’s testimony in which he admitted
telling authorities that McCuin had made incriminating statements and to
disbelieve the portions of Penix’s testimony in which he said that he was lying
when he told authorities about MCuin’s statements.  See Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488 U.S. 872
(1988).

          McCuin
argues that his case is “strikingly similar” to Herrin v. State, 125
S.W.3d 436 (Tex. Crim. App. 2002), a case in which the victim’s wallet
disappeared after his murder and there was no evidence directly linking the appellant
to the missing wallet.  Id. at 441–42.  Herrin is distinguishable
from the facts of this case because in addition to the missing red backpack and
$500, McCuin’s DNA was found in Ryan’s front jeans pocket and McCuin made admissions
to Penix, which were admitted in evidence.

          Viewing
all of the evidence in the light most favorable to the prosecution, a rational
jury could have found beyond a reasonable doubt that McCuin murdered Ryan in
the course of committing or attempting to commit robbery.  See Tex.
Penal Code Ann. § 19.03(a)(2); Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789.  Accordingly, the evidence is sufficient to support McCuin’s
conviction for capital murder.  We overrule McCuin’s first issue.

IV.  Lesser Included Offense

           In
his third issue, McCuin argues that the trial court erred by denying his
request to instruct the jury on murder, a lesser included offense of capital
murder.  McCuin relies solely on the arguments that he asserted in his
evidentiary sufficiency challenge.

          We
use a two-step analysis to determine whether an appellant was entitled to a
lesser included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73
(Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser
offense must come within article 37.09 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 37.09 (West 2006); Moore v. State, 969 S.W.2d
4, 8 (Tex. Crim. App. 1998).  Second, some evidence must exist in the record
that would permit a jury to rationally find that if the appellant is guilty, he
is guilty only of the lesser offense.  Hall, 225 S.W.3d at 536; Salinas
v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.

          Murder
is a lesser included offense of capital murder.  McKinney v. State, 207
S.W.3d 366, 370 (Tex. Crim. App. 2006).  Therefore, McCuin has satisfied the
first prong of the two-step analysis.  He cannot, however, satisfy the second
prong.  The State presented evidence that Ryan’s red backpack and $500 were
missing, that genetic material consistent with McCuin’s DNA was discovered in
Ryan’s front jeans pocket, that McCuin confessed to Penix that he murdered and
robbed Ryan, and that McCuin did not return to his Cadillac until approximately
ninety seconds after the gunshot.  Because the jury rationally could have concluded
that McCuin had the specific intent to commit robbery, no jury could rationally
find that, under the evidence presented, McCuin was guilty of murder but not
guilty of capital murder.  See Hall, 225 S.W.3d at 536; Salinas,
163 S.W.3d at 741.  Accordingly, we overrule McCuin’s third issue.

V.  Evidence
of Gang Membership

          In
his fourth issue, McCuin argues that the trial court abused its discretion by
permitting the State to present evidence of McCuin’s membership in a violent,
criminal street gang.  He contends that the evidence was inadmissible (1) under
rule of evidence 404(b) because it “was probably very damaging to the Defense
case” and (2) under rule of evidence 403 because “[n]ot only would it make
the jury more likely to believe that McCuin was capable of murder, but the jury
would also be tempted to convict McCuin in order to keep a potentially violent
criminal off the streets.”

          We
review a trial court’s decision to admit or exclude evidence under an abuse of
discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000).  A trial court does not abuse its discretion as long as the
decision to admit or exclude evidence is within the zone of reasonable
disagreement.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990) (op. on reh’g).

          The
general rule is that the defendant is to be tried only for the offense charged,
not for any other crimes or for being a criminal generally.  Segundo v.
State, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008), cert. denied, 130
S. Ct. 53 (2009).  Therefore, “[e]vidence of other crimes, wrongs or acts”
may not be admitted during the guilt-innocence phase of trial “to prove the
character of a person in order to show action in conformity therewith.”  Tex.
R. Evid. 404(b).

          The
State called Demarcus Penix to testify.  Penix testified on direct examination
that he told police that McCuin had told him that McCuin “tried to jack a guy
and had to knock him out.”  Penix also testified that he told Eric Holder that
McCuin had told him that McCuin was involved in the “robbery and killing.”  Specifically,
Penix said that McCuin told him that McCuin had “approached [Ryan] to rob him,
he just wanted an easy take.”  Although Penix confirmed making these
statements, he testified that he had lied about what McCuin told him to get the
authorities “out my face.”

          On
cross-examination, Penix confirmed that he signed an affidavit stating that he
had a conversation with McCuin after the offense and that McCuin said he was
not involved in the incident at the car wash.  Penix also stated in the
affidavit, “Since [McCuin] has told me that he did not commit this crime and I
have known him for as long as I have, I don’t believe [McCuin] was involved and
did not commit this murder.”

          On
redirect examination, Penix testified that he, McCuin, and Kevin (McCuin’s
brother) were members of a street gang and that “[i]t’s bad” to tell the police
what you know about another gang member.

          It
is apparent from the record that the State did not call Penix for the purpose
of eliciting testimony that McCuin was a gang member.  Instead, the State
called Penix to testify about his statements to police regarding McCuin’s
comments implicating himself in the offense.  It was not until after Penix testified
on cross-examination about his affidavit, in which he stated that he did not
believe that McCuin had murdered Ryan, that the State impeached Penix with
evidence that he and McCuin were in the same gang and elicited testimony that
“[i]t’s bad” to tell the police what you know about another gang member.  This
court has previously held that evidence of gang membership bears on the
witness’s veracity and bias.  See McKnight v. State, 874 S.W.2d
745, 746–47 (Tex. App.—Fort Worth 1994, no pet.) (citing United States v.
Abel, 469 U.S. 45, 49, 105 S. Ct. 465, 469 (1984)).[5] 
Accordingly, we hold that the evidence of McCuin’s membership in the same gang
as Penix was admissible to show that Penix was biased to testify in favor of
McCuin.  See id.; see also Tex. R. Evid. 607 (stating that the
credibility of a witness may be attacked by any party, including the party
calling the witness).

          Turning
to McCuin’s rule 403 argument, “[a]lthough relevant, evidence may be excluded
if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.” 
Tex. R. Evid. 403.  Once a rule 403 objection is made, the trial court must
weigh the probative value of the evidence to determine if it is substantially
outweighed by its potential for unfair prejudice.  Santellan v. State,
939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  A rule 403 balancing test includes
the following factors:  (1) the inherent probative force of the proffered
item of evidence along with (2) the proponent’s need for that evidence
against (3) any tendency of the evidence to suggest decision on an
improper basis, (4) any tendency of the evidence to confuse or distract
the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation
of the evidence will consume an inordinate amount of time or merely repeat evidence
already admitted.  Gigliobianco v. State, 210 S.W.3d 637, 641–42 &
n.8 (Tex. Crim. App. 2006); Dodson v. State, No. 02-08-00286-CR, 2010 WL
2889693, at *4 (Tex. App.—Fort Worth July 22, 2010, pet. ref’d) (mem. op., not
designated for publication).

          The
probative value of the impeachment evidence was high because the State wanted
to show why Penix testified that he had lied to police about the statements
that McCuin had made to him.  The State mentioned the gang affiliation at
closing argument, but it was done in the context of arguing that Penix was
“trying his best to extricate himself from this case, doing everything he can
to take back the bad things that he said about [McCuin] because they are from
the same gang.”  McCuin argues that the evidence of his gang membership made
the jury “more likely” to believe that he was capable of committing murder; but
there was other, much stronger evidence that served the same purpose—McCuin actually
told Penix that he murdered and robbed Ryan.  After balancing the rule 403
factors, we conclude that the trial court could have reasonably determined that
the probative value of the evidence that McCuin was a member of the same gang
as Penix was not substantially outweighed by the countervailing factors
specified in the rule.  See Tex. R. Evid. 403.  We overrule McCuin’s
fourth issue.

VI.  Hearsay

          In
his fifth issue, McCuin argues that the trial court abused its discretion by
admitting hearsay testimony regarding the venue of the offense.  When the State
questioned two of its witnesses about whether the offense had occurred in
Tarrant County, McCuin asserted hearsay objections because the witnesses’
knowledge was based on road signs or on a map.  But one witness testified on
voir dire that he had “learned that Tarrant County covers different
parts of Texas and some parts of Arlington as well.”  The other witness
testified that he based his opinion in part on his “training.”  The trial court
therefore did not abuse its discretion by overruling McCuin’s objections because
the venue testimony was derived from the witnesses’ personal knowledge about
Tarrant County’s borders.  See Johnson v. State, No. 07-07-00327-CR,
2009 WL 102930, at *9 (Tex. App.—Amarillo Jan. 15, 2009, pet. struck) (mem.
op., not designated for publication) (“The testimony . . . that San
Jacinto Park is located in Potter County is not hearsay.  Here, the officers
were merely testifying from their personal knowledge and that testimony was
subject to cross-examination.”).  Alternatively, the testimony was admissible as
an exception to the hearsay rule.  See Tex. R. Evid. 803(20)
(“Reputation in a community . . . as to boundaries of . . .
lands in the community . . . .”); Shilling v. State, 977
S.W.2d 789, 790 (Tex. App.—Fort Worth 1998, pet. ref’d) (holding that testimony
about county’s boundary location was admissible under rule of evidence
803(20)).  We overrule McCuin’s fifth issue.

VII.  Surveillance Footage Exhibit

          In
his sixth issue, McCuin argues that the trial court erred by denying his motion
for new trial because the jury was permitted to consider surveillance footage
that was not expressly admitted in evidence.  The trial court held a “sua
sponte hearing” after McCuin’s trial concluded because it came to the court’s
attention that the video of the surveillance footage from the liquor store that
had been published to the jury during trial and during the jury’s deliberations
was not the video contained on the disc that was entered in evidence as State’s
Exhibit 20.  As McCuin acknowledges, the video that was published to the jury, which
was transferred onto a disc marked as Court’s Exhibit C during the sua sponte
hearing, contains the same footage as State’s Exhibit 20 but has an additional
eight minutes of surveillance footage that was not included in State’s Exhibit
20.  At the sua sponte hearing, the trial court, the State, and both McCuin and
his trial attorney watched both exhibits, and the State and McCuin’s attorney
agreed that Court’s Exhibit C was the version of the surveillance footage that
had been published to the jury.  On the State’s motion, the trial court
supplemented the record with Court’s Exhibit C in order to conform the record
to the evidence at trial.

          An
exhibit not expressly admitted in evidence may nonetheless be considered as evidence
when the parties and the judge treat the exhibit as if it were in evidence.  See
Harden v. State, 417 S.W.2d 170, 174 (Tex. Crim. App. 1967); see also
Amador v. State, 221 S.W.3d 666, 673–74 (Tex. Crim. App. 2007).  Here, the
record demonstrates that both parties treated Court’s Exhibit C as if it had
been admitted in evidence.  Both parties agreed at the sua sponte hearing that
Court’s Exhibit C was the video that was published to the jury.  There is no
dispute that State’s Exhibit 20 was never published to the jury.  The cases
that McCuin cites are all distinguishable from the facts of this case because
the exhibits in those cases were never treated as though they had been admitted
in evidence.  See, e.g., Osborne v. United States, 351 F.2d 111,
115 (8th Cir. 1965).  We hold that the trial court did not abuse its discretion
by denying McCuin’s motion for new trial.  See State v. Herndon, 215
S.W.3d 901, 906–07 (Tex. Crim. App. 2007) (identifying abuse of discretion as
standard to review denial of motion for new trial).  Accordingly, we overrule
McCuin’s sixth issue.

VIII.  Conclusion

          Having
overruled all of McCuin’s issues, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL:  MEIER, J.; LIVINGSTON, C.J.; and
GABRIEL, J.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
June 30, 2011









[1]See Tex. R. App. P. 47.4.





[2]The footage shows McCuin driving
his Cadillac to the car wash; McCuin then parking the Cadillac at the liquor
store; McCuin exiting the Cadillac and walking towards the car wash; Kevin
exiting the passenger side of the Cadillac and entering the driver’s side of
the Cadillac; Kevin backing the Cadillac out of the parking space and pulling
forward; a patron of the liquor store turning towards the car wash upon hearing
a gunshot; the Cadillac leaving the liquor store parking lot and driving to the
car wash; and McCuin running from the car wash to the Cadillac.





[3]The indictment alleged in
relevant part that McCuin “did then and there intentionally cause the death of
an individual, Rodney Ryan, by shooting him with a firearm, and the said
defendant was then and there in the course of committing or attempting to
commit the offense of robbery.”





[4]The State did not seek the
death penalty.





[5]In Abel, the
Supreme Court reasoned,

          Mills’ and respondent’s
membership in the Aryan Brotherhood supported the inference that Mills’
testimony was slanted or perhaps fabricated in respondent’s favor.  A witness’
and a party’s common membership in an organization, even without proof that the
witness or party has personally adopted its tenets, is certainly probative of
bias.

469 U.S. at 52, 105
S. Ct. at 469.