**UNITED STATES of America, Appellee,**

v.

**Donald Edward ROWLEY, Appellant.**

**No. 91–3308.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1992.

Decided Sept. 23, 1992.

---

one count of conspiracy to: a) manufacture 50 or more marijuana plants; and, b) possess 50 or more marijuana plants with the intent to manufacture, in violation of 21 U.S.C. § 846.

Rowley raises a number of issues on appeal and disputes the district court's application of the sentencing guidelines. For reversal, Rowley argues, among other things, that: a) a clerical omission invalidates the initial search warrant; b) his proffer statements to the government were involuntary, and their admission for impeachment purposes was not harmless error; c) a juror's misconduct required a mistrial ruling; and d) he was not allowed to make his defense by the exclusion of two pretrial services witnesses.

Rowley disputes the district court's enhancement of his sentence for the possession of firearms during the offense, pursuant to U.S.S.G. § 2D1.1(b)(1), and for being an organizer, leader, or manager of the offense pursuant to U.S.S.G. § 3B1.1(c). He also argues that he has consistently accepted responsibility for his offense and should have received a reduction under U.S.S.G. § 3E1.1.

We affirm the convictions but remand for resentencing.

## I. BACKGROUND

Rowley is a 40-year-old farmer and unemployed school custodian, with a wife and two teenage children. In September of 1990, a deputy sheriff received a tip about marijuana cultivation and entered Rowley's Iowa farm through open fields. He discovered small dispersed patches of cultivated marijuana. After further investigation, a search warrant was procured from a local magistrate. The warrant clearly specified the land and buildings to be searched, but the magistrate neglected to fill in a blank on the standardized form indicating whether the search was of a person, premises, or a specific thing.

On September 12, numerous officers searched Rowley's farm and outbuildings

Alfredo Parrish, Des Moines, Iowa, argued, for appellant.

Steven M. Colloton, Asst. U.S. Atty., Cedar Rapids, Iowa, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, PECK,[*] Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Donald Edward Rowley appeals his two-count conviction and sentence. He was convicted on one count of possession, manufacture, and intent to distribute 50 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and of aiding and abetting the above in violation of 18 U.S.C. § 2. He was also convicted of

[*] The HONORABLE JOHN W. PECK, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

finding 42 cultivated marijuana plants, 34 stubs of cultivated marijuana plants, and numerous craters. Marijuana, marijuana seed, grow lamps, and other items of cultivation were found in outbuildings, in a padlocked basement room, and in Rowley's bedroom. A number of unloaded weapons, including two automatic pistols and an automatic rifle, were found in Rowley's bedroom.

Rowley was at a chiropractor's appointment when the search began but arrived home while it was under way. He was given a *Miranda* warning, and at once admitted to being the marijuana "farmer." Federal Agent Weir, who participated in the search, testified Rowley then stated that he had recently destroyed marijuana plants in anticipation of the raid. Weir testified that he and Rowley mutually agreed on a figure of 75 to a 100 plants destroyed.

Both Rowley and his wife were charged with controlled substance offenses, firearms offenses, conspiracy, and engaging in conduct that subjected their property to forfeiture. On September 13, the United States sent Rowley a proffer letter.[1] Rowley entered into proffer discussions with the United States on September 18. He signed an agreement which stipulated that any information he gave during the discussions would not be used against him, except in a perjury or false statements prosecution or for impeachment in any proceeding. Appellant's Appendix I, p. 15. The discussions bore no fruit. That is, Rowley did not implicate any identifiable others in controlled substance offenses, and there was no plea bargain.

The case proceeded to trial, where Rowley's wife was acquitted on all counts and he was convicted on all but the firearms charge. At trial, over defense counsel's continuing objection, statements Rowley made during the proffer discussions were used to impeach his credibility. The de-

fense also objected, during a side-bar discussion, to the government's admitted use of information from the proffer discussions to focus the subject matter areas of its cross-examination. Trial Transcript, p. 1235. By allowing the record to stand and those lines of questioning to continue, the district court implicitly overruled the defendant's objection.

During the same side-bar, allegations that a juror was not obeying the district court's instructions not to discuss the case came to light. The court and counsel interviewed the jurors, striking the offending juror from the panel. The juror in question had conversed with witnesses in the hallways, reporting to the other jurors that some witnesses had been waiting for two days to testify, commented on his acquaintance with several witnesses and the defendant, and mentioned his familiarity with Rowley's farm. He may also have commented to one juror that one witness was not too bright.

The other jurors all testified that they were not negatively influenced by the wayward juror, and could still be impartial. The district court declined to declare a mistrial, being satisfied that the remaining jurors were not prejudiced and would be impartial.

At sentencing, Rowley received two two-point enhancements, one for the presence of firearms, U.S.S.G. § 2D1.1(b)(1), and one for being the organizer and leader of the criminal activity, U.S.S.G. § 3B1.1(c). The enhancements brought his offense level up from 26 to 30 under the guidelines. He was sentenced to 97 months (eight years and one month) in prison, the minimum term for a first time offender with a level 30 offense.

## II. DISCUSSION

### A. *The Search Warrant*

The search warrant, Appellant's Appendix [A.App.] I, p. 14, sets out in meticulous

---

**1.** The proffer letter contained an offer by the government of possible leniency if the defendant proffered information to the government leading to the fruitful investigation of criminal conduct by others. The government guaranteed the defendant limited use immunity for any

information provided if no plea bargain resulted. The information was not be used against the defendant except in perjury or false statements prosecutions or for impeachment in any proceeding.

detail the items to be sought and where the search is to be made. It commands the search, narratively, of the Rowleys' residence, buildings, garages, outbuildings, open fields, and any vehicles found on the property. It not only gives the Rowleys' address, but locates their farm by section number and township.

■ The magistrate's failure to fill in a standardized blank as to whether the search was of a person, premises, or a thing is immaterial because the magistrate had already clearly indicated the location of the search and that only certain premises and things were to be searched.[2] The Fourth Amendment requires that search warrants particularly describe the place or thing to be searched, *Milliman v. Minnesota*, 774 F.2d 247, 249 (8th Cir.1985), *United States v. Clark*, 531 F.2d 928, 931 (8th Cir.1976), it does not require redundancy.

This warrant easily passes the test for the constitutional adequacy of the description of what is to be searched. *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir.1986), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986). It enabled "the executing officer to locate and identify the premises with reasonable effort" and there was no "reasonable probability that another premise might be mistakenly searched." *Id.*

Our decision in *United States v. Curry*, 911 F.2d 72 (8th Cir.1990), *cert. denied*, ─── U.S. ───, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991), invalidating a warrant where a space for the address had not been filled in, turned on the lack of an address *anywhere* in the warrant, either actually or through incorporation.

Since we hold that the warrant itself was constitutionally sufficient, we do not address whether the "good faith" exception in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), applies. We do note, however, that it took us several minutes of earnest examination

to discover the clerical omission about which the defendant complains.

## B. *The Proffer*

■ Rowley contends that impeaching him with information provided under limited use immunity during the proffer violated his Fifth Amendment privilege against compelled self-incriminating evidence. The government promised that any information Rowley provided would not be used against him, except for perjury or false statement prosecutions or for impeachment purposes. A.App. I, p. 15.

Although Rowley's statements were given in the hope of leniency, they were not given with the promise of leniency, and thus were not involuntary on that score. *Rachlin v. United States*, 723 F.2d 1373, 1377–78 (8th Cir.1983). Their use for impeachment therefore comports with the Supreme Court's rule that voluntary statements or illegally seized evidence, even if otherwise inadmissible, may be used to impeach a testifying defendant. *See Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); *James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990); *United States v. Havens*, 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980); *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).

■ Inducing a statement by the promise of immunity does not in itself violate the Fifth Amendment's prohibition. In *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), the Supreme Court held a defendant's compelled testimony did not violate the Fifth Amendment provided the testimony was immunized from use to the extent the Fifth Amendment would protect a defendant from the use of involuntary statements. In *New Jersey v. Portash*, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979), the Court elaborated that com-

---

**2.** The warrant directed a search of "[t]he residence, buildings, garages, outbuildings, and open fields belonging to or occupied by Donald or Cheryl Rowley, 3100 Pleasant, Lehigh, Iowa, Webster Township, Section 018 of Webster County, Iowa. Also all vehciles [sic] found on property at the time of the execution of the search warrant." A.App. I, p. 14. The list of what to search for was even more detailed and exhaustive.

pelled immunized statements, unlike "statements taken in violation of *Miranda,* may not be put to any testimonial use whatever against" the defendant in any criminal proceeding.

However, in *United States v. Apfelbaum,* 445 U.S. 115, 126–27, 100 S.Ct. 948, 955, 63 L.Ed.2d 250 (1980), the Court affirmed the use of compelled immunized testimony in independent false statements prosecutions. It held that such use does no violence to the defendant's Fifth Amendment rights, as the defendant has no right to commit perjury. The Court has never held, however, that the government may use, for any purpose whatsoever, the substance of actually involuntary statements.

■ Thus, only two things could have rendered Rowley's statements inadmissible for impeachment purposes. Actually involuntary statements may not be used for impeachment purposes, *Mincey v. Arizona,* 437 U.S. 385, 397–98, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978). Also, voluntary statements which are inadmissible on the issue of guilt may be improper for impeachment when their admission for impeachment purposes does not sufficiently promote the court's truth-seeking function and it is not just a "speculative possibility" that such use would encourage police misconduct. *See James,* 493 U.S. at 311–13, 110 S.Ct. at 651–52 (defendant's inadmissible statements may not be used to impeach other defense witnesses).

■ An incomplete explanation of limited use immunity may, however, give rise to the presumption that a statement induced by a promise of such immunity was involuntary. But here, where the defendant was represented and advised by counsel,

we cannot so find. Trial Transcript, p. 7. *Arizona v. Fulminante,* — U.S. —, —, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991) (totality of circumstances must be considered in determining involuntariness).

■ Rowley gave his information pursuant to a government promise not to use it against him, except in certain specified ways. Any breach of that promise would, of course, render his statements unusable. His statements were elicited by the promise they would not be used against him except for impeachment purposes. Such exception has been held to include use of the information by the government to focus its cross-examination. *Havens,* 446 U.S. at 627, 100 S.Ct. at 1916, finds this use to be within the purview of impeachment, so long as the prosecution's questions "are plainly within the scope of the defendant's direct examination." We determine that the record shows no questions which would not ordinarily have been asked with or without the proffered information. The defendant was impeached only once, and the discrepancy between his in court and proffer testimony was so slight that it is highly improbable his credibility was harmed.[3] Since the defendant was obligated to answer the questions truthfully, and these questions would normally have been asked in any case, he suffered no harm. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (evidence which would be inevitably discovered may be used by the prosecution even though obtained by infringement of defendant's Sixth Amendment rights).[4]

### C. *The Wayward Juror*

After two jurors complained to the district court that a member of the jury was

---

**3.** Rowley testified to having shared "joints" with five people, and was impeached by his proffer statement that he had shared "joints" with a dozen people. Trial Transcript, p. 1246–47.

**4.** We believe the practice used by the government in this case is fraught with danger. This is because during the proffer discussions, the defendant may have every incentive to exaggerate what he knows in order to induce leniency, and may be misled by assurances the information cannot hurt him. To avoid a ruling that information proffered will be considered involuntari-

ly given, we think that the government should disclose the probability that the information will be used to focus the cross-examination for impeachment purposes.

Here, Rowley was guided by counsel. In other cases we have recently reviewed, this element has been missing. Impeachment is a term of art. An explanation may be necessary in order for the proffer to be truly voluntary and to render merely "speculative" the possibility that this practice will encourage police misconduct. *James,* 493 U.S. at 311, 110 S.Ct. at 651.

not complying with the court's instruction not to discuss the case until the deliberation phase, the court and counsel interviewed each juror separately, in chambers, under oath. Each juror testified that they ignored, walked away from, or reprimanded their wayward compatriot when he mentioned he knew the witnesses, knew the defendant, was familiar with the defendant's premises, or was surprised he was on the jury.

The jurors all testified that no negative comments were made about the witnesses, with the exception of one juror (one of the two who alerted the judge to the problem). She testified that the wayward juror had accompanied her to the parking lot and said he thought one witness was not too bright. Several jurors testified that the wayward juror also greeted witnesses in the halls, and then mentioned those witnesses had been waiting to testify for several days.

The talkative juror made no comments as to the witnesses' credibility or character. All the jurors stated, under oath, that the comments of acquaintance would have no effect on their ability to deliberate impartially. The district court then overruled the defense motion for a mistrial and struck the juror.

■ The exposure of the jury to improper communications or extrinsic material evidence creates a presumption of prejudice, and therefore a presumption of an infringement of the defendant's Sixth Amendment right to trial by an impartial jury. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *Osborne v. United States*, 351 F.2d 111, 117 (8th Cir.1965). This presumption may be rebutted, where, as here, the proper reaction of the court establishes that the defendant has not been prejudiced. *Remmer*, 347 U.S. at 229, 74 S.Ct. at 451; *see United States v. St. Clair*, 855 F.2d 518, 520–21 (8th Cir.1988); *United States v. Hood*, 593 F.2d 293, 296–97 (8th Cir.1979).

■ The court gave notice to the defendant of the problem. Together with counsel, the court interviewed the jurors, under oath, on the record. The investigation revealed that the juror who was volunteering extrinsic information revealed nothing material to the defendant's case. Thus, this case is factually unlike *Osborne*, where the jury was accidentally given a grand jury transcript which reflected poorly on the defendant's character and showed him to be guilty of other crimes. Further, in *Osborne* the problem did not come to light until after the verdict, the judge did not interview the jury, and the information was extremely prejudicial. *Osborne*, 351 F.2d at 114–119.

The district court exceeded our test in *Hood*, 593 F.2d at 296, in determining whether the jury's exposure to extrinsic information required a mistrial. The court's careful determination even satisfied the test of the "slightest possibility" of prejudice to the defendant found in *Johnston v. Makowski*, 823 F.2d 387, 390 (10th Cir.1987), a test which we have specifically declined to adopt. *St. Clair*, 855 F.2d at 521.

Giving "substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury, since the trial judge has the advantages of close observation of the jurors and intimate familiarity with the issues at trial," *United States v. Cheyenne*, 855 F.2d 566, 568 (8th Cir.1988), we are confident the district court correctly found there was no prejudice to the defendant.

## D. *The Pretrial Services Witnesses*

Since these witnesses were allowed to testify as to the defendant's chemical dependency, as he desired, under other auspices, we find this issue to be moot.

## E. *Enhancements*
### 1) Firearms

■ Although Rowley had many hunting weapons, the proximity of automatic weapons, albeit unloaded, quickly accessible, in his bedroom where he also kept marijuana, exacerbated the danger of drug-related violence. This is exactly the situation the guidelines intended to address through the section 2D1.1(b)(1) enhancement. The district court's finding by a

preponderance of the evidence that it was not clearly improbable the weapons were connected to the offense[5] is therefore not clearly erroneous. We affirm the enhancement.

### 2) Acceptance of Responsibility

 The district court determined that Rowley was not technically entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, since he continued to deny the existence of the conspiracy for which he was convicted. Whether or not to grant the reduction is largely within the discretion of the sentencing judge, *United States v. Keene*, 915 F.2d 1164, 1170 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991), and we find no abuse of discretion.

### 3) Organizing the Offense

 Rowley received a two-level enhancement under U.S.S.G. § 3B1.1(c), for being the organizer of the criminal activity.[6] The court based its finding on the sophistication of Rowley's "farm" and his use of a cousin's address to receive some growing equipment. Sentencing Transcript, p. 56. The record shows only that the cousin knew Rowley was using his address to receive "stuff" he wanted to hide from his wife, not that the cousin knew what the "stuff" was. Trial Transcript, p. 1208, 1286–87. Since the jury had alternative bases available for their conspiracy conviction, the conviction itself provides no finding that the cousin knew what the "stuff" was.

Being part of a conspiracy does not imply that one is an organizer, leader, manager, or supervisor in the criminal activity. As the district court stated:

> It was a sophisticated growing operation, that's clear, but there is a paucity of evidence ... of any sales, no evidence of a group of salesmen who he directed or supplied or supervised.

Sentencing Transcript, p. 56. In fact, from the record, the evidence for the conspiracy itself was thin.

 The key determinants of section 3B1.1 are control and organization. The defendant must have exercised some degree of control over others involved in the commission of the offense, or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms "organizer, leader, manager and supervisor," each of which suggest the presence of underlings or subordinates.

*United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990); *accord* U.S.S.G. § 3B1.1 comment 3. Sharing "joints" with friends or allegedly receiving seeds from a friend do not provide Rowley with underlings to control and supervise, and are insufficient bases for the section 3B1.1 enhancement. *See United States v. Reid*, 911 F.2d 1456, 1465 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991).[7] Rowley's wife, by all the evidence, vigorously opposed and did not contribute to his growing operation, and so is unavailable as a basis for the enhancement.

Therefore, we find the section 3B1.1(c) enhancement based on the use of the cousin's address to be clearly erroneous. *United States v. Manuel*, 912 F.2d 204, 207 (8th Cir.1990); *United States v. Collar*, 904

---

**5.** Sentencing Transcript, p. 46–48.

**6.** Section 3B1.1(c) directs a two level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than [one with five or more participants or was otherwise extensive]." U.S.S.G. § 3B1.1. "[T]his enhancement does not apply where the defendant is the sole participant in the offense," *United States v. Streeter*, 907 F.2d 781, 792 (8th Cir.1990), regardless of how extensive the operation was.

**7.** "We have recognized a broad definition of what constitutes a leadership and organizational role" for the purposes of U.S.S.G. 3B1.1, *United States v. Manuel*, 912 F.2d 204, 207 (8th Cir. 1990) (quoting *United States v. Collar*, 904 F.2d 441, 442 (8th Cir.1990)), but we have always required evidence that the defendant directed or procured the aid of underlings. *See Manuel*, 912 F.2d at 207 (procuring other's aid in cashing checks); *Collar*, 904 F.2d at 442 (wife drove getaway car).

F.2d 441, 442 (8th Cir.1990). Further, we find there is no other evidence in the record on which to base the enhancement.

We have carefully considered Rowley's other arguments for reversal or resentencing and find them to be without merit.

## III. CONCLUSION

For the reasons stated above, we affirm the conviction, but remand for resentencing without the section 3B1.1(c) enhancement.