UNITED STATES of America,
Plaintiff,

v.

Raymond A. POITRA, Defendant.

Raymond A. Poitra, Petitioner,

v.

United States of America, Respondent.

Nos. C4–02–58, A1–04–128.

United States District Court,
D. North Dakota,
Northwestern Division.

Dec. 21, 2004.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for Plaintiff.

Jeff L. Nehring, Nehring Law Office, Williston, ND, for Defendant.

## ORDER GRANTING DEFENDANT'S PETITION FOR HABEAS CORPUS RELIEF

HOVLAND, Chief Judge.

Before the Court is Raymond A. Poitra's pro se Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

The motion was filed on October 21, 2004. On October 24, 2004, the Court reviewed the motion and ordered the Government to file a response. On November 16, 2004, the United States filed a response requesting that the Court deny Poitra's motion for post-conviction relief. Poitra submitted a reply brief on November 29, 2004. For the reasons set forth below, the Court grants Poitra's motion in part.

## I. BACKGROUND

The defendant, Raymond Poitra, was charged in a seven-count Indictment with various offenses. Counts One and Two of the Indictment charged Poitra with embezzlement and theft in excess of $226,000 and $89,440 respectively from an Indian tribal organization in violation of 18 U.S.C. § 1163 and 18 U.S.C. § 2. Count Three charged Poitra with embezzlement and theft in excess of $296,000 in violation of 18 U.S.C § 666(a)(1)(A). Counts Four, Five, and Six charged Poitra with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i). Count Seven charged Poitra with conspiracy to launder money in violation of 18 U.S.C. § 1956(h). The Indictment also contained a forfeiture allegation which sought forfeiture of money, bank accounts, real and personal property, and life insurance policies.

On February 10, 2003, Poitra pled guilty to all seven counts. The parties agreed that Poitra's sentence would be calculated according to the November 2001 United States Sentencing Commission Guidelines Manual. See Plea Agreement ¶ 10. The Government contemplated an adjusted offense level of 26 based upon a base offense level of 6 under U.S.S.G § 2B1.1(a); a 14–level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) for the loss involved in the offense being more than $400,000; a two-level enhancement under U.S.S.G. 3B1.1(c) for leadership role; a two-level

enhancement under U.S.S.G. § 3B1.3 for abusing a position of public trust; and a two-level enhancement under U.S.S.G. § 2B1.1(b)(8)(c) for use of sophisticated means such as fictitious entities. Poitra stipulated to the base offense level of 6 and all upward adjustments except for the enhancement under U.S.S.G. § 2B1.1(b)(8)(c) for use of sophisticated means. See Plea Agreement ¶ 13. The Government agreed to recommend a three-level downward departure for "acceptance of responsibility" under U.S.S.G. § 3E.1.1(a) and (b)(2). This would yield a total adjusted offense level of 23 if Poitra had a Criminal History Category I, or 21 if the Court found that U.S.S.G. § 2B1.1(b)(8)(c) (sophisticated means) did not apply. The contemplated result was a sentence range of 46–57 months for an offense level 23 if Poitra fell within Criminal History Category I, and 37–46 months if the offense level was 21. See Plea Agreement ¶ 14.

In the Plea Agreement, Poitra specifically waived his right to appeal the sentence and waived his right to contest his conviction or sentence in any post-conviction proceeding. See Plea Agreement ¶ 23. However, Poitra retained the right to appeal his sentence in the event the Court departed from the Sentencing Guideline range.

The Presentence Investigation Report ("PSR") prepared by the probation officer calculated Poitra's sentence using the November 2002 United States Sentencing Commission Guidelines Manual rather than the November 2001 Sentencing Guidelines. The PSR established an offense level of 26 for the theft/embezzlement charges (Counts One–Three). The PSR set forth the calculated offense level for the money laundering charges which were not calculated in the Plea Agreement. The probation officer arrived at an adjusted offense level of 28 on the money laundering charges based upon a base offense level of 22 under U.S.S.G. § 2S1.1(a); a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B) because Poitra was convicted under 18 U.S.C. § 1956; a two-level enhancement under U.S.S.G. § 3B1.1 for leadership role; and a two-level enhancement under U.S.S.G. § 3B1.3 for abusing a position of public trust. Using U.S.S.G. § 3D1.2 and U.S.S.G § 3D1.3, the combined adjusted offense level for the seven counts was 28. A three-level downward departure was calculated for "acceptance of responsibility" under U.S.S.G. § 3E1.1(a) and (b)(2), yielding a total offense level of 25. With a Criminal History Category I, this resulted in a guideline range of 57–71 months.

On May 5, 2003, Poitra was sentenced to a term of 57 months which was at the low end of the Sentencing Guideline range. Poitra was also ordered to pay restitution in the amount of $577,397.

On May 14, 2003, Poitra filed a Notice of Appeal with the Eighth Circuit Court of Appeals. The Government filed a motion to dismiss the appeal based on Poitra' waiver of appeal rights. Poitra's counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and requested leave to withdraw. Subsequently, Poitra filed a pro se brief with the Eighth Circuit. On May 24, 2004, the Eighth Circuit granted the Government's motion to dismiss and enforced Poitra's waiver of his appeal rights. *See United States v. Poitra*, 97 Fed.Appx. 73, 2004 WL 1146137 (8th Cir.2004) (per curiam).

On September 20, 2004, Poitra filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence. Poitra contends his sentence violates the Sixth Amendment citing the recent Supreme Court opinion of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the ex post facto

clause of the Constitution, and ineffective assistance of counsel.

## II. LEGAL DISCUSSION

### A. SIXTH AMENDMENT

Poitra first contends that *Blakely v. Washington* requires that his sentence be vacated because it was based on federal Sentencing Guideline enhancements which are not supported by facts found by a jury beyond a reasonable doubt, in violation of his Sixth Amendment right to a jury trial. In Blakely, the Supreme Court invalidated an upward departure under the State of Washington's sentencing guidelines using the rule expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court struck down Washington's sentencing guidelines and held that the sentence imposed was improper because the facts supporting the departure "were neither admitted by the petitioner nor found by a jury." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537.[1] The Court will address the issue of whether the Blakely opinion operates in favor of Poitra.

### 1. THE DOCTRINE OF STARE DECISIS—EXISTING PRECEDENT

This Court is bound to apply the precedent of the United States Supreme Court and the Eighth Circuit. The doctrine of stare decisis demands that the Court not lightly cast aside past decisions. *See Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

The United States Supreme Court laid out the rationale behind the doctrine of stare decisis:

> [T]he desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.

*Moragne,* 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339.

The Supreme Court made it clear in Blakely that it was not invalidating the federal Sentencing Guidelines. 124 S.Ct. 2531, 2538 n. 9. In what has become a famous and oft-quoted footnote, Justice Scalia wrote "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Id.* Likewise, in Apprendi, the Supreme Court did not alter the Sentencing Guidelines beyond its ruling in the case. 530 U.S. 466, 497, n. 21, 120 S.Ct. 2348, 147 L.Ed.2d 435 (stating "[t]he Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held") (citing *Edwards v. United States,* 523 U.S. 511, 515, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998)).

Despite Justice Scalia's footnote and deflection of what many maintain is the real issue, federal and state courts are daily weighing in on the "havoc" the Blakely

---

1. The relevant facts in Blakely were briefly summarized by the Court: "Petitioner Ralph Howard Blakely, Jr., pleaded guilty to the kidnaping of his estranged wife. The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months. Pursuant to state law, the court imposed an 'exceptional' sentence of 90 months after making a judicial determination that he acted with 'deliberate cruelty.'" —— U.S. at ——, 124 S.Ct. at 2534.

decision has created. See —— U.S. ——, ——, 124 S.Ct. 2531, 2549, 159 L.Ed.2d 403 (2004) (O'Connor, J., dissenting—"The Court ignores the havoc it is about to wreak on trial courts across the country.") It is clear the "havoc" envisioned and feared by Justice O'Connor has occurred. There is currently considerable uncertainty among the federal circuit courts and district courts as to whether Blakely applies to the federal Sentencing Guidelines.

Prior case law reveals that the Supreme Court has consistently upheld the Sentencing Guidelines against close scrutiny and constitutional attack. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). However, after carefully surveying the Supreme Court precedent, it is undisputed that the Sentencing Guidelines have never faced a Sixth Amendment right to jury trial challenge such as the one mounted in Blakely against the State of Washington's sentencing guidelines. None of the Supreme Court cases which have addressed the federal Sentencing Guidelines have even discussed the Sixth Amendment right to a jury trial, and none have involved a Sixth Amendment challenge.[2]

The Eighth Circuit has held that the Sentencing Guidelines do not violate the rule of Apprendi. *See United States v. Banks,* 340 F.3d 683, 684–85 (8th Cir.2003).

No other Eighth Circuit opinions have been finalized since Blakely regarding the constitutionality of the Sentencing Guidelines. Although the Eighth Circuit held in *United States v. Mooney,* 2004 WL 1636960 (8th Cir.2004), that the Sentencing Guidelines were unconstitutional, that decision has been vacated and will be heard en banc at a later date. A similar decision in a case entitled United *States v. Pirani,* No. 03–2871, has also been vacated and a rehearing en banc has been ordered to be "held at a time and place to be announced." 2004 WL 1748930 (8th Cir. August 16, 2004). As a result, there is no binding post-Blakely precedent in the Eighth Circuit.

## 2. *BLAKELY V. WASHINGTON—* ADMITTED CONDUCT

The Government contends that even if Blakely applies to the federal Sentencing Guidelines, it would provide no relief for Poitra. As previously mentioned, the rule of Apprendi states that [o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. In Blakely, the Supreme Court made clear that the "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington,* —— U.S. ——, ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (emphasis added). The Gov-

---

**2.** On October 4, 2004, the United States Supreme Court heard oral arguments in two cases regarding the constitutionality of the federal Sentencing Guidelines in light of Blakely. *See United States v. Booker,* 375 F.3d 508 (7th Cir.2004), cert. granted, —— U.S.

——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004); *United States v. Fanfan,* No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004), cert. granted, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004). Both cases are still pending before the Supreme Court.

ernment contends that any increase in Poitra's sentence was based on facts to which he admitted. The Court must examine each enhancement to Poitra's sentence in light of any factual admissions on his part.

a.) U.S.S.G. § 2B1.1(b)(1)(H)—Loss Exceeds $400,000

■ Under U.S.S.G. § 2B1.1(b)(1)(H), a 14–level enhancement is warranted if the loss exceeded $400,000. Count One of the Indictment alleged that Poitra stole, embezzled or misapplied over $206,000 by directing and facilitating payment of a tribal organization's (Uniband) funds for rental and work, neither of which took place or were billed at excessive rates. Poitra admitted this conduct in the Plea Agreement. See Plea Agreement, ¶ 6(j) through (l).

Count Two of the Indictment alleged that Poitra stole, embezzled, or willfully misapplied over $89,440 by directing and facilitating billing invoices to Uniband for machine rentals and services which did not take place or were billed at excessive rates. Again, Poitra admitted this conduct in the Plea Agreement. See Plea Agreement ¶ 6(m) and (n).

Count Three alleges that Poitra stole, misapplied or converted over $296,000. In the Plea Agreement, Poitra admitted the following conduct: (i) purchased a Mustang Skid Steer loader for which he has was given credit for lease payments made by Uniband in the amount of $18,932; (ii) purchased Rammer Wacker for $3,050 which was paid for with Uniband funds but which he kept for himself; (iii) purchased a 97–1083 Gehl Dynalift for which he was given credit for lease payments made by Uniband in the amount of $73,245; (iv) used $18,600 of Uniband funds to purchase a 200LC John Deere excavator; (vi) purchased a 544H John Deere loader for $95,600 using Uniband funds which he

kept for himself; (vii) purchased a C10 Skid Steer with $3,700 of Uniband funds and then resold the trailer to Uniband for $4,200; (viii) purchased a 185DPQ Air Compressor for $14,435 with Uniband funds which he kept for himself; and (ix) used $17,000 of Uniband funds to pay for repairs to a Cat loader which Poitra owned. See Plea Agreement, ¶ 6(o)(i) through (ix).

A careful review of the Plea Agreement clearly reveals that Poitra admitted that his embezzlement and theft activities exceeded $400,000. More important, Poitra admitted that this specific sentencing enhancement was warranted. See Plea Agreement ¶ 13. Based on the admitted conduct, the 14–level enhancement applied under U.S.S.G. § 2B1.1(b)(1)(H) does not run afoul of the Supreme Court's holding in either Blakely or Apprendi.

b.) U.S.S.G. § 2B1.1(b)(8)(C)—Sophisticated Means

■ Under U.S.S.G. § 2B1.1(b)(8)(C), a two-level sentencing enhancement is warranted if the offense involves "sophisticated means." The Sentencing Guidelines explain the "sophisticated means" enhancement as follows:

> For purposes of subsection (b)(8)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1, comment n. 6(B) (emphasis added).

A review of the Plea Agreement reveals that Poitra admitted to conduct that satisfies U.S.S.G § 2B1.1(b)(8)(C). Specifically, Poitra admitted that he "directed his daughter ... to open a bank account at Gate City Bank in Fargo, ND, under the fictitious business name of Diversified Enterprises, which bank account was used by [Poitra] for deposit of embezzled and misapplied funds, and [Poitra] directed [his daughter] to write checks out of that account at his direction and for [Poitra's] benefit." See Plea Agreement, ¶ 6(h). Poitra admitted that he "created false billing invoices from his fictitious company, Diversified Enterprises, ... and caused both checks to be deposited into the Diversified Enterprises bank account in Gate City in Fargo, which funds were ultimately used by [Poitra], or at [Poitra's] direction." Likewise, Poitra admitted that he "created false billing invoices from another fictitious company [Poitra] called KUR Equipment, Inc., ... and caused both checks to be deposited into the Diversified Enterprises bank account in Gate City in Fargo, which funds were ultimately used by [Poitra] or at [Poitra's] direction." See Plea Agreement, ¶¶ 6(g), (m), and (n).

It is clear that Poitra engaged in "sophisticated means" as defined and outlined in the Sentencing Guidelines, namely he created fictitious entities to carry out the fraud and money laundering scheme and conceal the fact these funds were being paid to him. Based on the admitted conduct, the two-level enhancement applied under U.S.S.G. § 2B1.1(b)(8)(C) does not run afoul of the Supreme Court's holding in either Blakely or Apprendi.

c.) U.S.S.G. § 2S1.1(b)(2)(B)—Convicted Under 18 U.S.C. § 1956

■ Under U.S.S.G. § 2S1.1(b)(2)(B), a two-level sentencing enhancement is warranted when the defendant is convicted under 18 U.S.C. § 1956. Poitra pled guilty to Counts Four, Five, and Six[3] which charged him with violating 18 U.S.C. § 1956(a)(1)(B)(I). Further, Poitra specifically admitted that this enhancement was warranted. See Plea Agreement ¶ 13. Based on the admitted conduct, the two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B) does not run afoul of the Supreme Court's holding in either Blakely or Apprendi.

d.) U.S.S.G. § 3B1.1(c)—Organizer, Leader, Manager, or Supervisor

■ Under U.S.S.G. § 3B1.1(c), a two-level sentencing enhancement is warranted if the defendant was an organizer, leader, manager, or supervisor in any criminal activity. The Eighth Circuit has held that this enhancement "is not appropriate where the defendant is the sole participant in the criminal activity." *United States v. Braun*, 60 F.3d 451, 452 (8th Cir.1995) (citing *United States v. Rowley*, 975 F.2d 1357, 1364 n. 6 (8th Cir.1992)). "To justify the leadership enhancement, a defendant need only have managed or supervised at least one other participant in the criminal conspiracy." *United States v. Bewig*, 354 F.3d 731, 738 (8th Cir.2003) (citing *United States v. Barrett*, 173 F.3d 682, 684 (8th Cir.1999)). Further, "[t]he enhancement may apply even if the management activity was limited to a single transaction." *Id.* (quoting *United States v. Garrison*, 168 F.3d 1089, 1096 (8th Cir. 1999)).

**3.** Count Six was later dismissed upon a motion made by the Government. See Docket

No. 34.

■ Poitra pled guilty to Count Seven which charged him with conspiracy to launder money. By doing so, Poitra admitted to taking part in criminal conduct where he was not the sole participant. Poitra also admitted that he directed his daughter to create a bank account for a fictitious entity and to write out checks on that account for his benefit or at his direction. See Plea Agreement, ¶¶ 6(g), (m), and (n). Further, Poitra also admitted that this sentencing enhancement was warranted. See Plea Agreement ¶ 13. Based on the admitted conduct, the two-level enhancement applied under U.S.S.G. § 3B1.1(C) does not run afoul of the Supreme Court's holding in either Blakely or Apprendi.

e.) U.S.S.G. § 3B1.3—Abuse of a Position of Trust

■ Under U.S.S.G. § 3B1.3, a two-level sentencing enhancement is warranted for abuse of a position of public trust in a manner that significantly facilitated the commission of the offense. Poitra admitted to being the Chief Executive Officer (CEO) of Uniband and using that position to steal, embezzle, and convert company funds that were in his care and custody as CEO. See Plea Agreement, ¶¶ 6(a) and (e). Poitra also admitted that as CEO he contracted with Marshall Parisien for construction and demolition projects totaling more than $511,000, which included Parisien's costs for leasing equipment. See Plea Agreement, ¶ 6(i). Poitra told Parisien that he could lease equipment from KP Construction which Parisien did and Parisien paid for the equipment by checks and money orders for the amount of $206,950 which came from funds paid to Parisien by Uniband. See Plea Agreement, ¶ 6(k). However, the equipment Parisien leased from KP had already been leased by Uniband from another company or was actually owned by Uniband. See Plea Agreement, ¶ 6(l).

It is evident from the Plea Agreement that Poitra admitted to criminal conduct that warrants a sentencing enhancement for the abuse of a position of trust under U.S.S.G. § 3B1.3 by using his position of CEO to commit the crimes for which he pled guilty. Further, Poitra specifically admitted that this sentencing enhancement was warranted. See Plea Agreement ¶ 13. Based on the admitted conduct, the two-level enhancement applied under U.S.S.G. § 3B1.3 does not run afoul of the Supreme Court's holding in either Blakely or Apprendi.

■ There is certainly the possibility that the United States Supreme Court will hold that Blakely v. Washington applies to the federal Sentencing Guidelines. However, even if that pronouncement is made, Poitra would not benefit from such a ruling. Simply stated, Poitra's case is unaffected by the Supreme Court's recent pronouncements in Blakely and Apprendi because a judge may increase a sentence beyond the statutory maximum based on facts admitted to by the defendant. In this case, the upward adjustments or enhancements to Poitra's sentence were based on facts to which he specifically admitted to in the Plea Agreement.

B. EX POST FACTO CLAUSE

Poitra also contends that his sentence violates the Ex Post Facto clause because the application of the November 2002 United States Sentencing Commission Guidelines Manual, in effect at the time of sentencing, yielded a higher total offense level than the November 1998 Sentencing Guidelines which were in effect at the time of his criminal conduct.[4]

4. Poitra contends that the 2001 United States

Sentencing Commission Guidelines Manual

 At the outset, the Government argues that Poitra has waived any right to contest the sentence. It is well-established that waivers of appellate rights are generally enforceable. *See United States v. His Law*, 85 F.3d 379 (8th Cir.1996). However, "[a] defendant must enter into a plea agreement and waiver knowingly and voluntarily for these agreements to be valid." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir.2003). "The burden of proof is on the Government to demonstrate that a plea agreement clearly and unambiguously waives a defendant's right to appeal." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir.2003) (citing *Margalli–Olvera v. INS*, 43 F.3d 345, 351 (8th Cir.1994)). To satisfy that burden the Government cites to paragraph 23 of the Plea Agreement which concerns Poitra's right to appeal. It provides in relevant part as follows:

> The defendant hereby waives this and any right to appeal the Court's entry of judgment against him and waives any right to appeal the imposition of sentence upon him under Title 18, United States Code, Section 3742(a), including any issues that relate to the establishment of the Guideline range, reserving only the right to appeal from an upward departure from the Guideline range that is established at sentencing. The defendant further waives all rights to contest his conviction or sentence in any postconviction proceeding, including one pursuant to Title 28, United States Code, Section 2255.

The Court finds that Poitra knowingly and intentionally waived his appellate rights via paragraph 23. The Court also finds that the Plea Agreement is clear and unambiguous. However, the Eighth Circuit has held that "[a]ssuming that a waiver has been entered into knowingly and voluntarily, we still refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *United States v. Andis*, 333 F.3d 886, 891 (8th Cir.2003). The Eighth Circuit has cautioned that this "exception is a narrow one", and plea agreements should not easily voided. *Id.* However, the Eighth Circuit has also recognized that under this exception "a defendant has the right to appeal an illegal sentence, even though there exists an otherwise valid waiver." *Id.* at 891–92 (citing *DeRoo v. United States*, 223 F.3d 919, 923–24 (8th Cir.2000)); *United States v. Michelsen*, 141 F.3d 867, 868–73 (8th Cir.1998)). "[A] sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime." *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir.2002); *see United States v. Peltier*, 312 F.3d 938, 942 (8th Cir.2002) (stating "[a] sentence is illegal when it is not authorized by law; for example when the sentence is 'in excess of a statutory provision or otherwise contrary to the applicable statute.' ").

 The Court understands that the miscarriage of justice exception is an "extremely narrow exception" and does not lightly case aside Poitra's plea agreement with the Government. *United States v. Andis*, 333 F.3d 886, 892. However, the Court expressly finds that the exception as defined by the Eighth Circuit is applicable

---

should not have been applied. In fact, the 2002 Sentencing Guidelines were actively used to calculate his sentence. To clarify, the parties agreed to the application of the November 2001 Sentencing Guidelines in the Plea Agreement. See Plea Agreement, ¶ 10. However, in the PSR, the probation officer calculated Poitra's sentence under the November 2002 Sentencing Guidelines because Poitra was sentenced in March of 2003 and the 2002 Manual was in effect at that time. Poitra contends that the 1998 Sentencing Guidelines should have been used and would have yielded a less harsh result.

in this case. Poitra contends that he has been subjected to an increased sentence due to the application of incorrect Sentencing Guidelines. If true, the contention arguably falls within the definition of an "illegal" sentence and warrants the application of the miscarriage of justice exception. The Court will allow Poitra to challenge his sentence in spite of the standard waiver of appellate rights which appears in the Plea Agreement.

■ The Eighth Circuit has provided insight to an ex post facto challenge under the Sentencing Guidelines:

Section 1B1.11 of the sentencing guidelines provides that the court is to use the guidelines manual in effect on the date that the defendant is sentenced, unless the court determines that this would violate the ex post facto clause of the United States Constitution, in which case it is to use the manual in effect on the date that the offense of conviction was committed. "Because an amendment to a Sentencing Guideline has the potential to increase a defendant's punishment for a crime committed prior to the amendment, 'the ex post facto clause is violated if a defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed.'"

*United States v. Frank*, 354 F.3d 910, 926 (8th Cir.2004) (citing *United States v. Comstock*, 154 F.3d 845, 847 (8th Cir.1998) (quoting *United States v. Bell*, 991 F.2d 1445, 1452 (8th Cir.1993))). In short, the Court is required to apply either the Sentencing Guidelines in place on the date of sentencing, or the Sentencing Guidelines in place on the date that the offense of conviction was committed, whichever yields the least harsh result. As a result, the Court must calculate Poitra's sentence under both.

■ The Court must first determine which federal Sentencing Guidelines Manual was in place on the date the offense of conviction was committed. The parties have suggested that the November 1998 Sentencing Guidelines Manual should be used. However, a close reading of the Sentencing Guidelines indicates otherwise. Poitra pled guilty to criminal conduct that took place between August of 1997 and January of 2001. The Sentencing Guidelines establish how to determine the date the offense of conviction was committed for purposes of identifying the appropriate Manual to be used:

Under subsection (b)(1), the last date of the offense of conviction is the controlling date for ex post facto purposes. For example, if the offense of conviction (i.e., the conduct charged in the count of the indictment or information of which the defendant was convicted) was determined by the court to have been committed between October 15, 1991 and October 28, 1991, the date of October 28, 1991 is the controlling date for ex post facto purposes. This is true even if the defendant's conduct relevant to the determination of the guideline range under § 1B1.3 (Relevant Conduct) included an act that occurred on November 2, 1991 (after a revised Guideline Manual took effect).

U.S.S.G. 1B1.11, comment n. 2. Poitra's criminal conduct ended on or about January 1, 2001. The November 2000 Sentencing Guidelines Manual was the Manual in effect at that time.[5] Therefore, the No-

5. The 2001 United States Sentencing Commission Guidelines Manual did not become effective until November of 2001.

vember 2000 Federal Sentencing Guideline Manual represents the Sentencing Guidelines in place on the date that the offense of conviction was committed. To determine whether there has been a violation of the Ex Post Facto clause the Court must calculate Poitra's sentence under the November 2000 Sentencing Guidelines (the Sentencing Guidelines in effect on the date that the offense was committed) and the November 2002 Sentencing Guidelines Manual (the Sentencing Guidelines in effect on the date of sentencing) to determine which yields a harsher sentence.

As previously discussed, Poitra's total offense level under the November 2002 Sentencing Guidelines was 25 in Criminal History Category I, resulting in a sentence range of 57–71 months. The parties agree that Poitra's sentence would have been the same if calculated under the November 2001 Sentencing Guidelines. As a result, the Court must then calculate Poitra's sentence under the November 2000 Sentencing Guidelines.

1. THEFT/EMBEZZLEMENT (COUNTS ONE, TWO, AND THREE)

For Counts One and Two the base offense level would be 4 under U.S.S.G. § 2B1.1(a). Under U.S.S.G.

§ 2B1.1(b)(1)(M), a 12–level enhancement would be warranted because the loss exceeded $500,000. Poitra would also receive a two-level enhancement under U.S.S.G. § 2B1.1(b)(4)(A) because the offense involved more than minimal planning.[6] As previously discussed, a two-level enhancement under U.S.S.G. § 3B1.1(c) would be warranted because Poitra was an organizer, leader, manager, or supervisor in the criminal activity. A two-level enhancement under U.S.S.G. § 3B1.3 would be warranted because Poitra abused a position of trust. This would yield a total adjusted offense level of 22.

2. MONEY LAUNDERING (COUNTS FOUR, FIVE, AND SEVEN)

Under U.S.S.G. § 2S1.1, the base offense level for the money laundering charges would be 20 because Poitra was convicted under 18 U.S.C. § 1956(a)(1)(B), not § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A). Under U.S.S.G. § 2S1.1(b)(2)(C), a two-level enhancement would be warranted because the value of the funds exceeded $200,000. Again, a two-level enhancement under U.S.S.G. § 3B1.1(c) would be warranted because Poitra was an organizer, leader, manager, or supervisor in the crim-

---

6. The Sentencing Guidelines provide a definition for "more than minimal planning":

"More than minimal planning" means more planning than is typical for commission of the offense in the simplest form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

. . .

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, comment n. 1(f). Poitra admitted to repeated criminal activity that took place over the course of several years. The Court finds that Poitra admitted to conduct in the plea agreement that would satisfy the "more than minimal planning" enhancement.

inal activity, and a two-level enhancement under U.S.S.G. § 3B1.3 would be warranted because Poitra abused a position of trust. This would yield a total adjusted offense level of 26.

## 3. COMBINED OFFENSE LEVEL

Section 3D1.1(a)(1) governs combined offenses and provides as follows:

(a) When a a defendant has been convicted of more than one count, the court shall:

(1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

U.S.S.G. § 3D1.1(a). Following U.S.S.G. § 3D1.2, all the counts would be grouped together. Lastly, under U.S.S.G. § 3D1.3, the combined offense level equals the highest offense level of the counts in the group. The highest adjusted offense level of all the counts would be 26 for Counts Four, Five, and Seven, resulting in a combined adjusted offense level of 26. Poitra would receive a three-level downward departure for acceptance of responsibility for a total offense level of 23. This would result in a sentence range of 46–57 months. The sentence range as calculated in the PSR, using the November 2002 Sentencing Guidelines, was a range of 57–71 months.

Based on the Court's calculations, the November 2000 Sentencing Guidelines would yield a less harsh result than the November 2002 Sentencing Guidelines that were actually used in the PSR. As a result, the Court finds that Poitra's sentence violates the Ex Post Facto clause and Poitra must be resentenced in accordance with the November 2000 Sentencing Guidelines.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Finally, Poitra contends that his right to effective assistance of counsel has been violated because his attorney allowed him to receive a sentence that violates the ex post facto clause. The Eighth Circuit outlined the claim as follows:

To obtain relief based on a deprivation of the right to effective assistance of counsel, [the defendant] must prove two elements of the claim. First, [the defendant] "must show that counsel's performance was deficient." This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S.Ct. 2052. We seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id*. Second, [the defendant] "must show that the deficient performance prejudiced the defense." *Id*. at 687, 104 S.Ct. 2052. This requires [the defendant] to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S.Ct. 2052.

*United States v. Thammavong*, 378 F.3d 770, 772 (8th Cir.2004).

The Court finds that Poitra has failed to prove ineffective assistance of counsel. The Court is not satisfied that counsel's

850

performance was deficient. However, new counsel will be appointed to Poitra for his resentencing.

III. CONCLUSION

For the reasons set forth above, the Court GRANTS in part the Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Docket No. 64). The Court DENIES the Defendant's request for an evidentiary hearing as moot. The Court will schedule a sentencing hearing at a later date. The Court will not release Poitra pending resentencing because such a release is unwarranted under 18 U.S.C. § 3143.

IT IS SO ORDERED.