

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00018-CR

KEITH DEMONT MCCUIN A/K/A                                    APPELLANT
KEITH MCCUIN

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In six issues, Appellant Keith Demont McCuin a/k/a Keith McCuin appeals

his conviction for capital murder.  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

On the night of November 22, 2008, McCuin shot and killed Rodney Ryan at a self-service car wash located in Fort Worth. A nearby liquor store's surveillance camera captured images of McCuin, his Cadillac, and his twin brother, Kevin, on video from the night of the offense.[2] After releasing the surveillance footage to the media, investigators developed McCuin as a suspect, arrested him, and collected a DNA sample from him. Authorities investigating the homicide never found the $500 in cash that Ryan's employer had given Ryan before he was last seen or a red backpack that he "always" carried, but they did learn that DNA discovered in the front pocket of Ryan's jeans was consistent with McCuin's DNA. McCuin pleaded not guilty to the offense of capital murder,[3] but a jury convicted him of that offense, and the trial court sentenced him to life imprisonment without parole.[4]

---

[2]The footage shows McCuin driving his Cadillac to the car wash; McCuin then parking the Cadillac at the liquor store; McCuin exiting the Cadillac and walking towards the car wash; Kevin exiting the passenger side of the Cadillac and entering the driver's side of the Cadillac; Kevin backing the Cadillac out of the parking space and pulling forward; a patron of the liquor store turning towards the car wash upon hearing a gunshot; the Cadillac leaving the liquor store parking lot and driving to the car wash; and McCuin running from the car wash to the Cadillac.

[3]The indictment alleged in relevant part that McCuin "did then and there intentionally cause the death of an individual, Rodney Ryan, by shooting him with a firearm, and the said defendant was then and there in the course of committing or attempting to commit the offense of robbery."

[4]The State did not seek the death penalty.

## III. EVIDENTIARY SUFFICIENCY—INTENT TO COMMIT ROBBERY

In his first and second issues, McCuin argues that the evidence is legally and factually insufficient to show that he committed capital murder because "there was insufficient evidence to establish that [he] intended to rob the victim, rather than merely to kill him."  McCuin thus does not challenge the sufficiency of the evidence to show that he murdered Ryan.

The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  The *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Id.*  Therefore, we overrule McCuin's second issue challenging the factual sufficiency of the evidence.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the

3

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

A person commits capital murder if he commits murder in the course of committing or attempting to commit robbery. Tex. Penal Code Ann. § 19.03(a)(2) (West 2011). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a) (West 2011). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of it. *Id.* § 31.03(a) (West 2011).

The court of criminal appeals has defined "in the course of committing" an offense as conduct occurring in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of the robbery. *Lincecum v. State*, 736 S.W.2d 673, 680 (Tex. Crim. App. 1987), *cert. denied*, 486 U.S. 1061 (1988). When a person is charged with committing murder in the course of committing a robbery, "[e]vidence is sufficient to support a capital murder conviction if it shows an intent to obtain or maintain control of property which was formed before *or contemporaneously with* the murder." *Shuffield v. State*, 189 S.W.3d 782, 791 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006); *Armstrong v. State*, No. AP-75706, 2010 WL 359020, at *3 (Tex. Crim. App. Jan. 27, 2010) (not designated for publication). The State does not have to prove "that the appellant completed the theft of the victim in order to establish the

4

underlying offense of robbery or attempted robbery." *Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). Rather, if there is evidence from which the jury rationally could conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of robbery. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury may infer the requisite intent to rob from circumstantial evidence, including the conduct of the defendant. *Id.*; *see Young*, 283 S.W.3d at 862.

The evidence demonstrates that Ryan died from a gunshot wound to the chest. Although the car wash is located just "next door" to the liquor store, approximately ninety seconds elapsed between the time that a patron leaving the liquor store heard a gunshot and the time that Appellant ran from the car wash to the Cadillac, according to the surveillance footage. Both Ryan's sister and his employer testified that Ryan "always" carried a red backpack with him, but the backpack was not discovered at the scene or ever returned to his sister. Ryan's employer, Matthew Tago, testified that Ryan worked the day of the offense, that Ryan was still at work when Tago left the office between 6:00 and 6:30 p.m., that Ryan had said that he wanted to wash his car, and that Tago gave Ryan $500 cash, which Ryan put in his shirt pocket. Authorities did not find the $500. DNA discovered in the front pocket of Ryan's jeans was consistent with McCuin's DNA; the DNA profile excluded 99.88% of African-Americans. Medical personnel

5

found Ryan's driver's license identification card on the ground. Demarcus Penix told police that McCuin had told him that McCuin "tried to jack a guy and had to knock him out." Penix also told Eric Holder that McCuin had told Penix that McCuin "approached [Ryan] to rob him, he just wanted an easy take."

McCuin argues that the presence of his DNA in Ryan's pocket could be a result of "many possibilities," not just that he had the intent to rob Ryan. But McCuin's argument is unpersuasive because "[c]ourts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt." *See Laster v. State*, 275 S.W.3d 512, 520–21 (Tex. Crim. App. 2009) (explaining abolition of reasonable hypothesis test); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) ("We have rejected the reasonable hypothesis construct as a measure of legal sufficiency.").

McCuin also points out that the time interval between when Ryan left work and the time of the first 911 call at 8:38 p.m. was more than two hours and, therefore, "[t]his interval provided ample time for Ryan to make one or more stops, and to dispose of his backpack and the money." Notwithstanding that this appears to be another reasonable hypothesis-type argument, Tago testified that he "left [Ryan] behind" when he left work, not that Ryan also left work between 6:00 and 6:30 p.m.

McCuin further argues that "Penix's unsworn statements about McCuin's alleged admission were denied by him under oath in court, and were of very dubious credibility in any event." But it was within the province of the jury as

6

factfinder to believe the portions of Penix's testimony in which he admitted telling authorities that McCuin had made incriminating statements and to disbelieve the portions of Penix's testimony in which he said that he was lying when he told authorities about MCuin's statements. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988).

McCuin argues that his case is "strikingly similar" to *Herrin v. State*, 125 S.W.3d 436 (Tex. Crim. App. 2002), a case in which the victim's wallet disappeared after his murder and there was no evidence directly linking the appellant to the missing wallet. *Id.* at 441–42. *Herrin* is distinguishable from the facts of this case because in addition to the missing red backpack and $500, McCuin's DNA was found in Ryan's front jeans pocket and McCuin made admissions to Penix, which were admitted in evidence.

Viewing all of the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that McCuin murdered Ryan in the course of committing or attempting to commit robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, the evidence is sufficient to support McCuin's conviction for capital murder. We overrule McCuin's first issue.

## IV. LESSER INCLUDED OFFENSE

In his third issue, McCuin argues that the trial court erred by denying his request to instruct the jury on murder, a lesser included offense of capital murder.

7

McCuin relies solely on the arguments that he asserted in his evidentiary sufficiency challenge.

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.

Murder is a lesser included offense of capital murder. *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006). Therefore, McCuin has satisfied the first prong of the two-step analysis. He cannot, however, satisfy the second prong. The State presented evidence that Ryan's red backpack and $500 were missing, that genetic material consistent with McCuin's DNA was discovered in Ryan's front jeans pocket, that McCuin confessed to Penix that he murdered and robbed Ryan, and that McCuin did not return to his Cadillac until approximately ninety seconds after the gunshot. Because the jury rationally could have concluded that McCuin had the specific intent to commit robbery, no jury could rationally find that, under the evidence presented, McCuin was guilty of murder

8

but not guilty of capital murder. *See Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741. Accordingly, we overrule McCuin's third issue.

## V. EVIDENCE OF GANG MEMBERSHIP

In his fourth issue, McCuin argues that the trial court abused its discretion by permitting the State to present evidence of McCuin's membership in a violent, criminal street gang. He contends that the evidence was inadmissible (1) under rule of evidence 404(b) because it "was probably very damaging to the Defense case" and (2) under rule of evidence 403 because "[n]ot only would it make the jury more likely to believe that McCuin was capable of murder, but the jury would also be tempted to convict McCuin in order to keep a potentially violent criminal off the streets."

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court does not abuse its discretion as long as the decision to admit or exclude evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008), *cert. denied*, 130 S. Ct. 53 (2009). Therefore, "[e]vidence of other crimes, wrongs or acts" may not be

9

admitted during the guilt-innocence phase of trial "to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b).

The State called Demarcus Penix to testify. Penix testified on direct examination that he told police that McCuin had told him that McCuin "tried to jack a guy and had to knock him out." Penix also testified that he told Eric Holder that McCuin had told him that McCuin was involved in the "robbery and killing." Specifically, Penix said that McCuin told him that McCuin had "approached [Ryan] to rob him, he just wanted an easy take." Although Penix confirmed making these statements, he testified that he had lied about what McCuin told him to get the authorities "out my face."

On cross-examination, Penix confirmed that he signed an affidavit stating that he had a conversation with McCuin after the offense and that McCuin said he was not involved in the incident at the car wash. Penix also stated in the affidavit, "Since [McCuin] has told me that he did not commit this crime and I have known him for as long as I have, I don't believe [McCuin] was involved and did not commit this murder."

On redirect examination, Penix testified that he, McCuin, and Kevin (McCuin's brother) were members of a street gang and that "[i]t's bad" to tell the police what you know about another gang member.

It is apparent from the record that the State did not call Penix for the purpose of eliciting testimony that McCuin was a gang member. Instead, the State called Penix to testify about his statements to police regarding McCuin's

10

comments implicating himself in the offense. It was not until after Penix testified on cross-examination about his affidavit, in which he stated that he did not believe that McCuin had murdered Ryan, that the State impeached Penix with evidence that he and McCuin were in the same gang and elicited testimony that "[i]t's bad" to tell the police what you know about another gang member. This court has previously held that evidence of gang membership bears on the witness's veracity and bias. *See McKnight v. State*, 874 S.W.2d 745, 746–47 (Tex. App.—Fort Worth 1994, no pet.) (citing *United States v. Abel*, 469 U.S. 45, 49, 105 S. Ct. 465, 469 (1984)).[5] Accordingly, we hold that the evidence of McCuin's membership in the same gang as Penix was admissible to show that Penix was biased to testify in favor of McCuin. *See id.*; *see also* Tex. R. Evid. 607 (stating that the credibility of a witness may be attacked by any party, including the party calling the witness).

Turning to McCuin's rule 403 argument, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

---

[5]In *Abel*, the Supreme Court reasoned,

> Mills' and respondent's membership in the Aryan Brotherhood supported the inference that Mills' testimony was slanted or perhaps fabricated in respondent's favor. A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias.

469 U.S. at 52, 105 S. Ct. at 469.

11

considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Once a rule 403 objection is made, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006); *Dodson v. State*, No. 02-08-00286-CR, 2010 WL 2889693, at *4 (Tex. App.—Fort Worth July 22, 2010, pet. ref'd) (mem. op., not designated for publication).

The probative value of the impeachment evidence was high because the State wanted to show why Penix testified that he had lied to police about the statements that McCuin had made to him. The State mentioned the gang affiliation at closing argument, but it was done in the context of arguing that Penix was "trying his best to extricate himself from this case, doing everything he can to take back the bad things that he said about [McCuin] because they are from the

12

same gang." McCuin argues that the evidence of his gang membership made the jury "more likely" to believe that he was capable of committing murder; but there was other, much stronger evidence that served the same purpose— McCuin actually told Penix that he murdered and robbed Ryan. After balancing the rule 403 factors, we conclude that the trial court could have reasonably determined that the probative value of the evidence that McCuin was a member of the same gang as Penix was not substantially outweighed by the countervailing factors specified in the rule. *See* Tex. R. Evid. 403. We overrule McCuin's fourth issue.

## VI. HEARSAY

In his fifth issue, McCuin argues that the trial court abused its discretion by admitting hearsay testimony regarding the venue of the offense. When the State questioned two of its witnesses about whether the offense had occurred in Tarrant County, McCuin asserted hearsay objections because the witnesses' knowledge was based on road signs or on a map. But one witness testified on voir dire that he had "*learned* that Tarrant County covers different parts of Texas and some parts of Arlington as well." The other witness testified that he based his opinion in part on his "training." The trial court therefore did not abuse its discretion by overruling McCuin's objections because the venue testimony was derived from the witnesses' personal knowledge about Tarrant County's borders. *See Johnson v. State*, No. 07-07-00327-CR, 2009 WL 102930, at *9 (Tex. App.—Amarillo Jan. 15, 2009, pet. struck) (mem. op., not designated for

13

publication) ("The testimony . . . that San Jacinto Park is located in Potter County is not hearsay.  Here, the officers were merely testifying from their personal knowledge and that testimony was subject to cross-examination.").  Alternatively, the testimony was admissible as an exception to the hearsay rule.  *See* Tex. R. Evid. 803(20) ("Reputation in a community . . . as to boundaries of . . . lands in the community . . . ."); *Shilling v. State*, 977 S.W.2d 789, 790 (Tex. App.—Fort Worth 1998, pet. ref'd) (holding that testimony about county's boundary location was admissible under rule of evidence 803(20)).  We overrule McCuin's fifth issue.

## VII.  SURVEILLANCE FOOTAGE EXHIBIT

In his sixth issue, McCuin argues that the trial court erred by denying his motion for new trial because the jury was permitted to consider surveillance footage that was not expressly admitted in evidence.  The trial court held a "sua sponte hearing" after McCuin's trial concluded because it came to the court's attention that the video of the surveillance footage from the liquor store that had been published to the jury during trial and during the jury's deliberations was not the video contained on the disc that was entered in evidence as State's Exhibit 20.  As McCuin acknowledges, the video that was published to the jury, which was transferred onto a disc marked as Court's Exhibit C during the sua sponte hearing, contains the same footage as State's Exhibit 20 but has an additional eight minutes of surveillance footage that was not included in State's Exhibit 20.  At the sua sponte hearing, the trial court, the State, and both McCuin and his trial

attorney watched both exhibits, and the State and McCuin's attorney agreed that Court's Exhibit C was the version of the surveillance footage that had been published to the jury. On the State's motion, the trial court supplemented the record with Court's Exhibit C in order to conform the record to the evidence at trial.

An exhibit not expressly admitted in evidence may nonetheless be considered as evidence when the parties and the judge treat the exhibit as if it were in evidence. *See Harden v. State*, 417 S.W.2d 170, 174 (Tex. Crim. App. 1967); *see also Amador v. State*, 221 S.W.3d 666, 673–74 (Tex. Crim. App. 2007). Here, the record demonstrates that both parties treated Court's Exhibit C as if it had been admitted in evidence. Both parties agreed at the sua sponte hearing that Court's Exhibit C was the video that was published to the jury. There is no dispute that State's Exhibit 20 was never published to the jury. The cases that McCuin cites are all distinguishable from the facts of this case because the exhibits in those cases were never treated as though they had been admitted in evidence. *See, e.g., Osborne v. United States*, 351 F.2d 111, 115 (8th Cir. 1965). We hold that the trial court did not abuse its discretion by denying McCuin's motion for new trial. *See State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007) (identifying abuse of discretion as standard to review denial of motion for new trial). Accordingly, we overrule McCuin's sixth issue.

15

## VIII. Conclusion

Having overruled all of McCuin's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MEIER, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 30, 2011